**ALABAMA STATE TEACHERS ASSOCIATION, a Corporation, on behalf of itself, its members and other Negro teachers similarly situated; Sarah B. Logan and Dorothy Hinson, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**LOWNDES COUNTY BOARD OF EDUCATION et al., Defendants.**

**Civ. A. No. 2633-N.**

United States District Court
M. D. Alabama, N. D.
June 17, 1968.

Fred D. Gray, Gray, Seay, Langford & Pryor, Montgomery, Ala., and Philip

J. Hirschkop, Cohen, Hirschkop & Hall, Alexandria, Va., for plaintiffs.

Maury D. Smith and Thomas W. Thagard, Jr., Goodwyn, Smith & Bowman, Montgomery, Ala., for Lowndes County Board and superintendent, Bullock County Board and superintendent, Perry County Board and superintendent, and Ernest Stone, State Superintendent of Education.

McLean Pitts and Phillip Henry Pitts, J. Garrison Thompson, Pitts & Pitts, Selma, Ala., and L. Y. Sadler, Camden, Ala., for Wilcox County Board and superintendent.

H. A. Lloyd, Lloyd & Dinning, Demopolis, Ala., for Marengo County Board and superintendent, Demopolis City Board and superintendent, and Linden City Board and superintendent.

Vaughan Hill Robison, Hill, Robison, Belser & Phelps, Montgomery, Ala., for Montgomery County Board and superintendent.

MacDonald Gallion, Atty. Gen., and Gordon Madison and Leslie Hall, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., Thomas H. Boggs, Linden, Ala., and Marcus E. McConnell, Jr., Livingston, Ala., for Sumter County Board and superintendent.

McLean Pitts and Phillip Henry Pitts, Pitts & Pitts, Selma, Ala., for Dallas County Board and superintendent.

Sam Earle Hobbs, Hobbs & Hain, and Reeves & Stewart, Selma, Ala., Truman Hobbs, Hobbs, Copeland, Franco, Riggs & Screws, Montgomery, Ala., for Selma City Board and superintendent.

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

JOHNSON, District Judge:

This is a class action seeking a declaration of the constitutionality, *vel non*, of eight acts of the Alabama Legislature[1] which purport to be of lo-

1. Those acts are as follows: (a) Act No. 41, February 2, 1956 (Marengo County); (b) Act No. 239, August 14, 1957 (Bullock County); (c) Act No. 361, August 23, 1957 (Lowndes County); (d) Act No. 186, September 28, 1959 (Mont-

cal application.[2] The eight special acts involved are in various forms,[3] the net effect of which is to deny benefits of the Alabama teacher tenure law[4] to teachers teaching within the systems where the acts apply, regardless of whether the teachers are employed by the county board of education or—in three of the counties—by a separate city board of education within the county. It is alleged that the pattern of these acts and action taken pursuant to them by the various defendant boards evidence a statewide plan of discrimination against Negro teachers in the counties of the State that have a preponderantly Negro population. It is further alleged that a conspiracy exists between the named defendants and the Alabama Legislature to accomplish this unlawful discrimination.

The defendants are eight county boards of education located in the "Black Belt" section of Alabama, three city boards of education located within some of those counties, and the superintendents of these eleven boards of education who are sued in both their individual and their official capacities. Dr. Ernest Stone is the remaining defendant. He is sued only in his official capacity as State Superintendent of Education.

Plaintiffs are the Alabama State Teachers Association—a statewide organization with a membership of some 10,000 Negro teachers—and two named Negro teachers who have been discharged, allegedly in violation of the tenure laws of Alabama.[5]

gomery County); (e) Act No. 383, August 7, 1961 (Sumter County); (f) Act No. 443, August 7, 1961 (Perry County); (g) Act No. 249, September 15, 1961 (Dallas County), and (h) Act No. 54, August 17, 1966 (Wilcox County).

Three city educational systems are named as parties defendant. The City School Boards of the Cities of Demopolis and Linden are both exempted from the operation of the state tenure act by Act No. 41, supra, which is applicable to the "county or any city board of education in Marengo County." The Selma City Board of Education is exempt under Act No. 249, supra, which applies to "the employing board of education * * * in Dallas County and in the City of Selma. * * *"

2. As originally filed, this action also sought the reinstatement of four named teachers to positions formerly held with various local boards of education. Two of those teachers also sought damages for wrongful discharge from the Lowndes County Board of Education and its Superintendent. Injunctive relief against the denial of the benefits of the statewide tenure law and against the implementation of the eight "exemption" statutes was also sought. By various stipulations, the damage and reinstatement claims have been dropped.

3. It would serve no useful purpose to set out all eight acts at length. Act No. 383, Acts of Ala.1961, Reg.Sess. p. 398 (approved August 7, 1961), dealing with Sumter County, is the only act whose constitutionality is defended by the defendants. That act is typical of the others and provides in material part that:

"The board of education of Sumter County, Alabama, may remove any teacher in the public school system of the county, or terminate his or her contract of employment, whether such teacher be on continuing service status or on a probationary appointment, at any time such action is deemed necessary to promote the best interest of the schools under the board's jurisdiction. The action of the board of education in regard to any such discharge shall be final and conclusive and shall not be subject to review or modification by any officer or agency, the provisions of Chapter 13, Title 52, Code of 1940, as amended, to the contrary notwithstanding; provided, however, that no teacher who has served under contract as a teacher in the Sumter County school system for three consecutive school years and who thereafter has been re-employed the succeeding school year shall be summarily dismissed under this Act, but shall be given a reasonable notice of the proposed action by the board and provided an opportunity to be heard."

4. Title 52, Sections 351–361(3), Code of Alabama 1940 (Recomp.1958).

5. These plaintiffs unquestionably have standing to raise the constitutional issues

■ A three-judge court was convened to hear this cause pursuant to Title 28, United States Code, Sections 2281, 2284.[6] The initial and principal inquiry is whether a substantial constitutional question is presented. Plaintiffs have taken alternative positions on this question. First, they contend that while the questions raised are serious constitutional questions, the statutes involved are so patently and manifestly unconstitutional that their operation may be enjoined by a single district judge. See Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); Meredith v. Fair, 305 F.2d 343 (5th Cir. 1962). In the alternative, they contend that if the statutes are not so patently unconstitutional as to allow their injunction by a single district judge, a three-judge court should be convened notwithstanding the fact that each of the statutes in suit applies only to one county.[7] Plaintiffs further contend that the pattern of the eight statutes involved evidences a statewide policy of discrimination against the plaintiffs and their class in several of the counties of the State that have a preponderantly Negro population. Since a statewide policy is well pleaded, a three-judge court is properly convened. See Rorick v. Board of Comm'rs of Everglades Drainage District, 307 U.S. 208, 59 S.Ct. 808, 83 L. Ed. 1242 (1939); Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La. 1960), aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961).

■ Initially it should be recognized that teachers in general constitute a special class of special importance to our society. Their rights constitute a "constitutionally protected domain" which the courts should be especially careful to protect. Barenblatt v. United States, 360 U.S. 109, 112, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959). Statutes such as these which have the potential to encroach upon the teaching profession's prerogatives, rights, and responsibilities must be carefully scrutinized; this is especially true where such statutes involve employment rights and tenure. See Shelton v. Tucker, 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). The State of Alabama tacitly recognized this when it adopted a statewide tenure law. There is a two-fold legislative purpose behind tenure laws and the tenure system: first, the laws and system give teachers security in their positions and guarantee the freedom to teach by protecting them from removal on unfounded charges or for political reasons; second, the system benefits the public generally by assuring a more competent and efficient teaching force. Board of Education of Marshall County v. Baugh, 240 Ala. 391, 199 So. 822 (1941). "Teachers' Tenure Acts are based upon the policy of protecting the educational interests of the state, and not a policy of granting special privileges to teachers of a certain class." Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938).

involved. NAACP v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Smith v. Board of Education of Morrilton School Dist. No. 32, 365 F.2d 770, 777 (8th Cir. 1966), and authorities there cited.

6. The complaint as filed sought injunctive relief; hence a three-judge court was required. Title 28, United States Code, Section 2281. Under the facts of this case, injunctive relief is not appropriate at this time nor is it now being sought.

See excerpt transcript, Exhibit "A" hereto, pp. 309, 310.

7. These questions are not merely academic from the plaintiffs' point of view since five of the eight counties involved, and all three of the city boards, are outside the Middle District of Alabama. Since all eight statutes are identical in effect and raise identical constitutional issues, sound judicial administration favors the plaintiffs' position. Venue is correctly laid in this district. Title 28, United States Code, Section 1392(a).

The facts in this case are clear, simple, and undisputed with respect to the only issue with which this Court now deals—the facial constitutionality, *vel non*, of the eight exemption statutes. The absence of dispute on this point is best demonstrated by the excerpt transcript of preliminary proceedings attached as Exhibit "A" to this opinion. Following the presentation of a prima facie case by plaintiffs—in the form of stipulations—virtually every defendant stood mute on the facial constitutionality question. Of the counties standing mute, some denied the application of the statutes. Some even claimed to have administratively readopted the statewide system. Sumter County offered evidence but merely proved that it had sought passage of the local act because "in the opinion of the Board, ['the provisions of the present State Tenure Law'] serve to make it *difficult and expensive* for the Board to dismiss a teacher whose service is unsatisfactory, but who has committed no overt act of insubordination, neglect of duty, etc." (Emphasis added.) The "etc." is unexplained as is the reason why it is "more difficult and expensive" for Sumter County to administer the general tenure law than it is for the other 66 counties in the State.

The parties are in agreement that the principles of Griffin v. School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), control in this case. The brief filed on behalf of the Sumter County Board, its superintendent, and the Attorney General of Alabama quotes the following language from that case:

"[T]here is no rule that counties, as counties, must be treated alike; the Equal Protection Clause relates to equal protection of the laws 'between persons as such rather than between areas.' Salsburg v. Maryland, 346 U. S. 545, 551 [74 S.Ct. 280, 98 L.Ed. 281] (1954). Indeed, showing that different persons are treated differently is not enough, without more, to show a denial of equal protection.

Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 556 [67 S.Ct. 910, 912, 91 L.Ed. 1093] (1947). It is the circumstances of each case which govern. Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 539–540 [62 S.Ct. 1110, 1112, 86 L.Ed. 1655] (1942)." 377 U.S. at 230, 84 S.Ct. at 1233.

The brief further quotes:

"A State, of course has a wide discretion in deciding whether laws shall operate statewide or shall operate only in certain counties, the legislature 'having in mind the needs and desires of each.' Salsburg v. Maryland, supra, 346 U.S., at 552, [74 S.Ct. 280, 98 L.Ed. 281]. A State may wish to suggest, as Maryland did in *Salsburg*, that there are reasons why one county ought not to be treated like another. 346 U.S., at 553–554, [74 S.Ct. 280, 98 L.Ed. 281]." 377 U.S., at 231, 84 S. Ct. at 1233.

The last quoted paragraph continues and states the principle which this Court now concludes is controlling:

"But the record in the present case could not be clearer that Prince Edward's public schools were closed and private schools operated in their place with state and county assistance, for one reason, and one reason only; to ensure, through measures taken by the county and the State, that white and colored children in Prince Edward County would not, under any circumstances, go to the same school. *Whatever nonracial grounds might support a State's allowing a county to abandon public schools* [or, in this instance, teacher tenure laws], *the object must be a constitutional one, and grounds of race and opposition to desegregation do not qualify as constitutional.*" 377 U.S., at 231, 84 S.Ct. at 1233. (Emphasis added, footnote omitted.)

▮▮ The simple fact is that between 1957 and 1966 the Legislature of Alabama denied the benefits of the teacher tenure law to eight counties which, with one exception, are among

the twelve counties in this State having a preponderantly Negro population.[8] The only inference which this Court can draw is racial motivation. It would not be worthwhile for this Court to take the time to catalog[9] the number of times it has been called upon to strike down legislation of the State of Alabama on racial grounds, particularly in areas relating to the operation and maintenance of the educational system of the State. Suffice it to say that the history and background of the State in this regard has been previously documented.[10] When measured against this background, the mere fact that the so-called exemption statutes are designed to operate only in seven of the predominantly Negro counties is sufficient to shift the burden of suggesting some rationale for their facial constitutionality to the State.[11] This the State has failed to do. The fact that most of the statutes have not been used at all indicates that the counties will not be severely handicapped by their absence; it further indicates that no necessary relationship exists between the exemption statutes and the proper operation of the educational system. This Court has absolutely no guidance as to any possible rational basis for the acts or explanation for their existence other than arbitrary classification on a racial basis. Griffin v. School Board of Prince Edward County, supra; Bush v. Orleans Parish School Board, 194 F. Supp. 182 (E.D.La. 1961), aff'd *sub nom.* Tugwell v. Bush, 367 U.S. 907, 81 S.Ct. 1926, 6 L.Ed.2d 1250 (1961). The defendants have simply failed to overcome the inference of racial classification implicit in this case. See Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954).

Since teacher tenure statutes are involved, we would be compelled to reach the same conclusion without drawing an inference of racial classification. The paramount importance of the full protection of teachers' rights has already been emphasized. Implicit in the passage of the tenure law was recognition of this importance to all teachers as a class. It would be disingenuous to deny that the eight special statutes here involved create a second class. No rational basis appears for the existence of this second class in an area where the rights involved are of paramount importance and the greatest sensitivity. This is a "discrimination of an unusual character" which the courts must carefully weigh. Morey v. Doud, 354 U.S. 457, 464, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957). State legislatures are, of course, free to create classifications. Gulf, Colorado and Santa Fe Ry. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1896). But that power is restricted by the Fourteenth Amendment. One of the classic statements of these limitations is found in Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 560, 22 S.Ct. 431, 46 L.Ed. 679

---

**8.** General Population Characteristics, United States Census of Population, 1960, sets out these percentages of nonwhite population in the eight counties involved in this suit:

| | |
|---|---|
| Bullock | 71.9% |
| Dallas | 57.7 |
| Lowndes | 80.7 |
| Marengo | 62.1 |
| Montgomery | 38.3 |
| Perry | 65.8 |
| Sumter | 76.3 |
| Wilcox | 77.9 |

**9.** See Stell v. Board of Education for City of Savannah, 387 F.2d 486, 489 (5th Cir. 1967).

**10.** See Lee v. Macon County Board of Education, 267 F.Supp. 458 (M.D.Ala., March 22, 1967). Compare generally Poindexter v. Louisiana Financial Assistance Commission, 275 F.Supp. 833 (E.D.La.1967), aff'd 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968).

**11.** Griffin v. School Board of Prince Edward County, supra. See Rolfe v. County Board of Education of Lincoln County, Tennessee, 391 F.2d 77, 80 (6th Cir. 1968).

(1902), which collected the relevant discussion of limitations from *Gulf,* supra:

> "[Classification] 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of· free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.' "

The arbitrariness of these statutes is clear. Alabama's teacher tenure laws are not a matter of peculiarly local concern; rather, they are involved with a vital and paramount concern throughout the State. The arbitrariness of these eight exemption acts is demonstrated by the fact that the expert local educational administrators in most of the counties neither requested nor supported the exemption of their counties from the tenure laws. In the one case where the local administrators requested the exemption, the state senator who introduced the bill testified that he had no idea of the effect the statute would have on his county. There was no showing of considered legislative judgment necessary to support this patently arbitrary classification. Nor was any "difference which bears a just and proper relation to the attempted classification" shown. Ob-

viously, if such a difference existed, the exemption statutes would have been used. Yet nearly all of the counties deny that the statutes have ever been applied.

Finally, we agree with the state officials that there is a total lack· of evidence of a conspiracy, *per se,* between the Legislature and the defendant state officials. The ten-year period involved, during which time the composition of the Alabama Legislature was changing and there were changes in local education administrators, belies any such conspiracy. But when placed in historical perspective, the conclusion of racial motivation on the part of the Legislature in the passage of these acts is inescapable. The material period begins shortly after Lucy v. Adams, 350 U.S. 1, 76 S. Ct. 33, 100 L.Ed. 3 (1955). It continues until a year before the time that it was necessary for this Court to enter a statewide order desegregating all public educational institutions of the State which were not already under separate court orders. Lee v. Macon County Board of Education, 267 F.Supp. 458 (M.D.Ala., March 22, 1967). During this period of time, the efforts of the State of Alabama to resist desegregation of education were at their apogee. When such a motivation is demonstrated, as it is here, and then is amplified by a patently arbitrary classification in an area as sensitive as that of teachers' employment rights, the legislation may not stand for the simple reason that it is inconsistent with the Fourteenth Amendment to the Constitution of the United States.

This Court has repeatedly expressed the hope that necessary progress will be made toward equal educational opportunity for all in the State of Alabama. One small sign lending encouragement for such hope is the fact that the statutes involved in this action are generally not being administered. With regard to the rest of the counties where the statutes have been applied, it is this Court's belief, based on the evidence in this case, that injunctive relief is not required at this time.

In accordance with the foregoing, it is the order, judgment and decree of this Court that the following acts of the Legislature of the State of Alabama:

(1) Act No. 41, February 2, 1956 (Marengo County)
(2) Act No. 239, August 14, 1957 (Bullock County)
(3) Act No. 361, August 23, 1957 (Lowndes County)
(4) Act No. 186, September 28, 1959 (Montgomery County)
(5) Act No. 383, August 7, 1961 (Sumter County)
(6) Act No. 443, August 7, 1961 (Perry County)
(7) Act No. 249, September 15, 1961 (Dallas County)
(8) Act No. 54, August 17, 1966 (Wilcox County)

be and each is hereby declared unconstitutional as denying to plaintiffs and the class they represent the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States. All other relief sought herein is ordered to be and the same is hereby denied.

Costs in these proceedings are taxed against the defendants, for which execution may issue.

## EXHIBIT A

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| Alabama State Teachers Association, a Corporation, on behalf of itself, its members and other Negro teachers similarly situated; et al. vs. Lowndes County Board of Education; et al. | Civil Action No. 2633–N. |

Heard Before:
   Hon. Richard T. Rives, United States Circuit Judge;
   Hon. Frank M. Johnson, Jr., United States District Judge; and
   Hon. Virgil Pittman, United States District Judge.
At: Montgomery, Alabama, March 4, 1968.

EXCERPT TRANSCRIPT: Of preliminary matters from opening of hearing to point at which testimony was about to be presented:

JUDGE RIVES: Gentlemen, we, of course, call the case number 2633–N, Alabama State Teachers Association against Lowndes County Board of Education and others. I note that you gentlemen have handed up a stipulation;

we will take time to glance at this stipulation.

(Court conferred)

JUDGE RIVES: Gentlemen, the Court is happy that you have been able to reach this stipulation, this agreement this far; and we will be glad to hear from the lawyers as to where this leaves us, what the next step is. Tentatively, it would seem to me that it might dispose of the jury problems in the case and the jury requests and leave—leave the purpose for equitable issues.

MR. FRED D. GRAY: May it please the Court, as the Court knows, we have been in conference going over it with the various lawyers involved, and we think some progress has been made. But we believe it would be expedient if each counsel representing each of the defendants would state to the Court his position, and I think it might save us some time with respect to testimony.

JUDGE RIVES: We will be happy to hear from any lawyer who wishes to state his position on that matter.

MR. MAURY D. SMITH: If the Court please, representing the Lowndes County Board of Education, in the pleadings heretofore filed we did request trial by jury on the damage aspect issue of the case. And I think it follows that this stipulation which we have filed with the Court would remove any necessity for this, and we would withdraw, certainly, our demand for trial by jury. What we have said—and it needs no further explanation, but in behalf of Lowndes County Board of Education, I think it is quite significant that since 1957, this school system has consolidated fifty-five individual schools into seven schools upon recommendation of the State Department of Education, as well as by order of the United States District Court. And that in this overall consolidation program, this system has, as a result of the consolidation, resulted in the dismissal of only six teachers, and that two of these teachers were Negro. And we feel that these facts, as I believe the plaintiffs did in joining in this stipulation, that from the facts it is apparent that this system has not applied Act 361 which is in question, and certainly not discriminatorily. It was for this reason that we were able to reach the agreement with the plaintiffs.

MR. GRAY: One other thing, your honor; we have further agreed in the Lowndes County case, the deposition of Mrs. Coleman, Mrs. Hinson, and Mrs. Logan is on file, and by agreement we offer them in evidence.

JUDGE RIVES: All right.

MR. PHILLIP HENRY PITTS: May it please the Court—

JUDGE RIVES: Mr. Pitts.

MR. PITTS: —I am Phillip Henry Pitts, and represent the Wilcox County Board of Education and the Dallas County Board of Education. I would like to direct to the Court first my remarks concerning the Wilcox County Board of Education. At the present time, this Court knows there is an Act of local application as it affects the tenure law as it applies to Wilcox County. The Wilcox County Board of Education's position, as far as the local Act is concerned, is we are willing to submit the constitutionality of the Act to this Court. We are taking the position that the Act as it is written is constitutional. However, we are further taking the position that at all times since the Act has been applied, that the Wilcox County Board of Application—Board of Education has followed the state tenure law on any dismissal of teachers. The only teachers that have been dismissed have been dismissed through justifiable reduction in average daily attendance. We have been able to stipulate with counsel for the plaintiffs that we would allow them to introduce the transcripts of the four teachers who appealed their cases to the Tenure Board. We would like to further state to the Court that we have been able to stipulate to them that the only—as far as the Act is concerned, we are willing for the Court to decide on the constitutionality of the Act, but as far as jurisdiction is con-

cerned, we are only submitting to the jurisdiction of the Court as it applies to the local Act of application. As this Court knows, this—the Wilcox County Board of Education is presently under the jurisdiction of the United States District Court for the Southern District of Alabama, Northern Division. The case was tried in Selma, Alabama, last spring. At the present time, Wilcox County Board of Education is rendering its reports in compliance with that Court's order. I would like to further state to the Court at the present time there are some thirteen schools in Wilcox County; and, since Mr. Guy S. Kelly has become Superintendent of the Wilcox County Board of Education, there has been a tremendous effort on his part and on the behalf of the Board to upgrade the quality of education in Wilcox County and to provide the finest educational system that can be provided. But I would—my main purpose in stating is that we would—we are willing to—for them to go ahead and introduce the transcript, but would like distinctly understood to the Court that we are under orders of the United States District Court for the Southern District of Alabama.

JUDGE JOHNSON: Are the issues that are in this case involved in that case, Mr. Pitts?

MR. PITTS: Your honor, the—as far as these four teachers were concerned, originally there was mandamus suits to the Circuit Court of Wilcox County.

JUDGE JOHNSON: I am talking about the District Court case.

MR. PITTS: Yes, sir; the four teachers who are also alleged in this case intervened in the case in the United States Southern District of Alabama—

JUDGE JOHNSON: (Nodded to indicate affirmative reply)

MR. PITTS: —at the past time, and there was no ruling on that as of this date.

JUDGE JOHNSON: Involving the same issues that are present here?

MR. PITTS: Not as to the tenure law; no, sir; but as to the reinstatement of teachers, which they are not asking here in this complaint; but as far as the jurisdiction is concerned, I want it distinctly understood, as I have here, that we are only submitting to the Court as to the constitutionality of the local Act.

JUDGE RIVES: All right.

MR. PITTS: Now, as to—if the Court will permit me, I will go ahead and take Dallas County, even though it is further down the list as a party defendant.

JUDGE RIVES: Yes, sir.

MR. PITTS: As far as the Dallas County Board of Education is concerned, the Dallas County Board of Education's policy is that they follow the state tenure law. They have followed it in its entirety since the passage of the local Act, as it affects Dallas County. The Dallas County Board of Education takes no position, but stands mute before this Court as to the constitutionality or the unconstitutionality of the Act, as it applies to Dallas County.

JUDGE RIVES: Thank you, Mr. Pitts. Mr. Robison.

MR. VAUGHAN HILL ROBISON: May it please the Court—

JUDGE RIVES: Mr. Robison.

MR. ROBISON: —with respect to Act Number 186, which pertains to the Montgomery County system, it is the position of Montgomery County that this Board and the Superintendent of Education of Montgomery County has never used this Act, it has never been applied, and no teachers have been discharged since the passage of this Act; that we make no—or take no position with respect to the constitutionality of the Act, other than to say that on its face it would appear to be constitutional; but we take no position and stand mute be-

fore the Court with respect to any argument on that.

JUDGE RIVES: All right, sir.

MR. H. A. LLOYD: May it please the Court—

JUDGE RIVES: Mr. —.

MR. LLOYD: —I am H. A. Lloyd, representing the—

JUDGE RIVES: Mr. Lloyd.

MR. LLOYD: —Demopolis City School Board, the Marengo County School system, the Linden City School Board, and the various Superintendents who are in charge of those systems. We have previously filed an answer in this case, and our position is directed solely to the question of the constitutionality or unconstitutionality of Act Number 41, a local Act which has to do with the teacher tenure Act and an exemption from that Act in Marengo County. In the closing minutes before this Court convened, we were attempting to reach a stipulation with counsel for the plaintiffs, and perhaps we did, but I do want to state that the position of this—these Boards are all the same, to the effect that the provisions of Act Number 41 have never been brought into play at all in any of these three systems. Also, that while we feel that this Act is constitutional on its face, we also will stand mute before the Court as to any arguments against the constitutionality—or for the constitutionality or against the unconstitutionality of this Act.

JUDGE RIVES: Thank you, Mr. Lloyd. That was for Demopolis and Linden and what other School Board?

MR. LLOYD: Marengo County.

JUDGE PITTMAN: Marengo County.

JUDGE RIVES: Marengo County. Thank you.

MR. TRUMAN M. HOBBS: May it please the Court, I represent the Selma City Board of Education and Mr. Joseph A. Pickard, who is Superintendent of Schools of the City of Selma, individually and in his capacity as Superintendent. The position of the School Board and Mr. Pickard is that this Act, insofar as Dallas—insofar as the Selma City Schools is concerned, has not been discriminatorily applied in any manner; that subsequent to the passage of this local Act, with application to all the school systems of—in Dallas County, the School Board adopted its own procedures for notice and so forth to teachers in case of any discharge and so forth, and in—and it has not in any way been discriminatorily applied insofar as the Selma City School Board is concerned. We take the position that the Act on its face is not unconstitutional; that the tenure law may be repealed by the State Legislature insofar as individual counties is concerned, as has happened in this case; but we do not care to argue this point. I believe that this will—would be argued by Mr. Gordon Madison.

JUDGE RIVES: Thank you, Mr. Hobbs. For the benefit of the Court— which we are going to have to pass on the constitutionality of these local Acts before we get through with it—

MR. TRUMAN M. HOBBS: Yes, sir.

JUDGE RIVES: —it looks like the tenor of these stipulations is to the effect that all we would have to do, probably, is render a declaratory judgment. Apparently, there is no need, as far as I see now, for an injunction, because no irreparable harm is being done by discriminatory action; and, as far as I know, why, all the damage features are being withdrawn.

MR. TRUMAN M. HOBBS: That is my understanding.

JUDGE RIVES: And suits for damages.

MR. TRUMAN M. HOBBS: There never were any damage claims insofar as Selma City Schools were concerned.

JUDGE RIVES: No; I would like to know what—

MR. GORDON MADISON: Your honor—

JUDGE RIVES: —what—of course, the thing that strikes me as to whether they are constitutional is particularly

quotation from Griffin against School Board of Prince Edward County, by the Supreme Court, where the Supreme Court said, "Whatever nonracial grounds might support a State's allowing a county to abandon public schools, the object must be a constitutional one, and grounds of race and opposition to desegregation do not qualify as constitutional." If we just substitute "teacher tenure" for "public schools," that almost states what we have—what the claim is here: "Whatever nonracial grounds might support a State's allowing a county to abandon teacher tenure, the object must be a constitutional one, and grounds of race and opposition to desegregation do not qualify as constitutional." Of course, the Legislature has got broad authority to classify, but they must have a reasonable basis and not be purely arbitrary. I—I am a little in the dark as to what the Legislature's basis for classifying counties as not having teacher tenure would be; it would be—what reasonable basis would be suggested for it. If there is any reasonable basis suggested for it, I would like—like for you—some of you gentlemen to suggest it to us, because we have to be satisfied each statute is unconstitutional beyond a reasonable doubt before we say so, even though—

MR. TRUMAN M. HOBBS: I am sure this Court knows more about how statutes are passed up there in the Legislature than I do, but—

JUDGE RIVES: There is no Journal, no nothing, telling us what the object is. We have just got to do a little psychoanalysis to know what the object could be.

MR. TRUMAN M. HOBBS: I was—I will submit that the way local Acts are generally passed is that somebody from a local delegation decides, from that particular county, that they want the Act passed, and I don't think that you are going to find, insofar as local Acts are concerned, any intelligent rationale for why Marengo County passes a statute and why Lauderdale County doesn't, and so forth. And our—our—of course, we

would acknowledge that if this statute —these local statutes are discriminatorily applied, as some of the allegations in the complaint would indicate they have been discriminatorily applied in certain counties—

JUDGE RIVES: That certain—

MR. TRUMAN M. HOBBS: —in fact, I think the complaint alleges it as to all counties, why, then we think the county would have a very different duty, but simply on its face—

JUDGE RIVES: To the credit of the counties, they are not being discriminatorily applied. Mr. Madison.

MR. MADISON: If your honor please, on behalf of Sumter County Board of Education, I would like for the Clerk to note as part of the record, and one for each member of the Court, the resolution in which they requested the Attorney General's office to represent them in this proceeding—

JUDGE RIVES: Yes.

MR. MADISON: —and also if the Clerk will note—I know the Court takes judicial knowledge of the law—but the Clerk to note a copy of Act Number 383, pertaining to Sumter County, and also a copy of that for each member of the Court, of the Act. Now, I don't know whether it is appropriate at this time or not, your honor, but there were two resolutions adopted by the Board of Education there, one May 6, in '61, and the other May 9, '61; I would like for those to be noted in evidence, be introduced in evidence. We are going in—I have a copy of each of those for the Court. How many you got there?

THE CLERK: There is two.

MR. MADISON: That's right; two resolutions.

THE CLERK: This all there is?

MR. MADISON: Two resolutions, May 2 and May 9. Now, how many— how many you got up there now? Here is one of them, Fred. Have you got three for the Court there yet?

THE CLERK: No.

MR. MADISON: How many do you have? There are two resolutions—

THE CLERK: Yes; two, yes.

MR. MADISON: —attached together, one of May 2 and one of May 9, and that goes to one Judge, and there is another, same thing, is to the next Judge, and third to the third Judge. Each of your honor's have a copy there now of May 2?

JUDGE RIVES: No, sir; we just have one copy, but that is all right; we can do with one copy. May 2 and May 9.

THE CLERK: He's got a copy of all those.

MR. MADISON: That is May 9. This is May 9. Now, I will try to get May 2.

(Court conferred)

MR. MADISON: This is May 9. Do you have three May 9?

JUDGE PITTMAN: No; I need May 2.

JUDGE RIVES: Now, we have got one of each; each one of us has one.

MR. MADISON: You got May 2?

JUDGE RIVES: May 2 and May 9.

JUDGE PITTMAN: Yes, sir.

MR. MADISON: The Sumter County Board of Education, if your honor please, takes the position that the Act in question is constitutional and valid and does not offend any provisions of either State or Federal Constitution.

JUDGE RIVES: All right, gentlemen.

MR. SMITH: Your honor, if I could make reference to the further clients that we represent in this particular case: Additionally to the Lowndes County Board of Education, our firm represents Bullock County Board of Education, the Perry County Board of Education, and Dr. Ernest Stone, in his capacity as State Superintendent of Education. As to Bullock and Perry, and as stated by Mr. Robison of Montgomery and Mr. Hobbs for the Selma City system, our position is identical to theirs stated to the Court, that the statutes re-

lating to Bullock and Perry have not been applied in any manner, and certainly not in a discriminatory manner, and we take no further position as to the validity of the Act, except to say that it would appear that they are constitutional on their face.

JUDGE RIVES: All right. Is there any further statements by the attorneys? Mr. Pitts.

MR. PITTS: Your honor, also with Mr. Gray—I believe this was left out—it was agreed by the plaintiffs that they would strike the two party plaintiffs in the allegations as they affect the Wilcox Count Board of Education as to their dismissal; is that not correct?

MR. GRAY: We agreed, and do move the Court at this time, to strike Valerie Watts and Jessie Lymons as party plaintiffs. However, the records which we will introduce in just a moment does deal with these people, but we are asking no specific relief for them, other than that the exclusionary statute as applicable to Wilcox County be declared unconstitutional.

(Court conferred)

JUDGE RIVES: The Court will strike those two parties as parties plaintiff in the case.

MR. PITTS: Further, I don't know whether I have made myself clear; I don't want to be redundant in it, but as I have stated, both in behalf of Wilcox County and on behalf of Dallas County, we further take the position that there has been no application of the local Acts, and certainly none in a discriminatory nature.

MR. GRAY: And, you honor—and I think this may clear up Wilcox County —by agreement, we at this time introduce the record from the Tenure Commission in the following cases—

JUDGE RIVES: I presume everybody is through making their statements as to stipulations?

MR. GRAY: I think so, your honor.

JUDGE RIVES: We are down now to the introduction of testimony in the case?

MR. GRAY: Yes, sir.

JUDGE RIVES: All right, sir; you may proceed.

(END OF MATTERS COVERED IN THIS EXCERPT TRANSCRIPT)

- - - - - -

I hereby certify that the foregoing is a full, true, and correct transcript of notes taken by me in above matter, or that portion thereof indicated, on the 4th day of March, 1968.

(s) Glynn Henderson

Glynn Henderson,
Official Court Reporter.