199 So. 822

### BOARD OF EDUCATION OF MARSHALL COUNTY v. BAUGH et al.

### 8 Div. 73.

Supreme Court of Alabama.
Jan. 16, 1941.

Richard T. Rives, of Montgomery, and Marion F. Lusk, of Guntersville, for appellees.

Street & Orr, of Guntersville, for appellant.

394

GARDNER, Chief Justice.

Complainants, twelve in number, were principals or teachers in various schools of Marshall County during the scholastic year 1939-40. They file this bill on behalf of themselves and other teachers similarly situated, seeking specific performance of their employment contracts for the scholastic year of 1940-41, a remedy specifically provided in what is known as the Teacher Tenure Act. General Acts, Regular and Special Session 1939 page 759, Section 8.

The bill discloses that on April 1, 1940, the County Board of Education undertook or attempted to authorize the County Superintendent of Education to notify teachers generally in writing if their services were not desired for the succeeding year, the minutes of such meeting appearing on the records of the Board in the following words and figures:

"A motion was made by Mr. Childress and seconded by Mr. Green authorizing the Superintendent of Education to notify teachers in writing before the close of school if their services are not desired for the ensuing year. Said written notification to be signed by the Superintendent as above authorized in behalf of the County Board

of Education and to comply with Section 10 of Act # 499 of the Teacher Tenure Law. Approved: 4-29-40

"V. W. Dickson, Chairman of Board

"W. H. Black, Secretary of Board".

And on April 8th, 1940, there was served on each of complainants and other named teachers not parties to this suit (in all about forty in number), a notice, substantially alike and identical in effect, signed by the Superintendent of Education, in the following language:

"Dear Teacher:

"In harmony with recommendation received from the local board of trustees of the Sims school in District No. 61, and, in compliance with Section 10 of Act No. 499, (Teacher Tenure Law), enacted by the last Session of the Legislature of Alabama and approved September 21, 1939, it is now my duty and responsibility to notify you in writing of the termination of your employment by the Marshall County Board of Education. This termination is simultaneous with the expiration of your contract for the scholastic year of 1939-40.

"Very truly yours,

"W. H. Black

"W. Hugh Black, Superintendent".

Coming first to a consideration of the question which involves the merits of this case, it is readily observed that complainants' rights are rested upon a noncompliance, on the part of the County Board, with the provisions of Section 10 of the Teacher Tenure Act, supra, which section reads as follows: "Section 10: Any teacher in the public schools, whether in continuing service status or not, shall be deemed reemployed for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; provided, however, that in no case shall such notice be given the teacher later than the first day of May of the termination of such employment, and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the first day of June."

It is clear enough this provision of the act was intended to secure to the teacher a continuing service 'for the succeeding year, unless notified to the contrary pur-

suant to Section 10 of the Act; and that this written notice to the contrary must be given under the direction of the County Board not later than the first day of May.

▮ It is the County Board that must determine this important matter, and no one else, and the action of the Board in this respect involves a delicate exercise of a wise discretion. This, therefore, was a duty, the exercise of which, the County Board could not delegate to the County Superintendent of Education or any one else. 46 C.J. 1033; Perkins & Hopkins v. Reed, 14 Ala. 536.

▮ The County Board of Education speaks through its records or written memorials of its actions. Board of Education v. Watts, 19 Ala.App. 7, 95 So. 498, 499, and Ex parte Watts, 209 Ala. 115, 95 So. 502. The resolution noted above names no teacher and appears upon its face to leave the matter in the hands of the County Superintendent of Education. So interpreted the action in that regard was a nullity. 46 C.J. 1033.

But the County Board argues upon the theory all of this constituted an irregularity only, was of consequence subject to ratification, (citing 15 C.J. 465, 554; 20 C. J.S., Counties, §§ 90, 194; Board of Education v. Watts, supra; Ryan v. Humphries, 50 Okl. 343, 150 P. 1106, L.R.A.1915F, 1047; Montgomery County v. Pruett, 175 Ala. 391, 394, 57 So. 823), and that the notice given by the Superintendent of Education to the various named teachers was in fact ratified and confirmed by the Board, as shown by its minutes in the following language: "A motion was made by Mr. Childress and seconded by Mr. Jackson approving release of Mr. Delphine Giers, Mr. J. L. Clay, Mr. R. L. Watters, and others shown on attached list, said releases being in line with authorization of Board of Education found under Item #5 of minutes dated April 1, 1940. The motion carried.

"Others as follows:"

Here follows a list of teachers by name, unnecessary to set out.

We have shown, however, that this matter of having notice given the teachers that their services would not be desired for the succeeding year, was a duty involving the exercise of a discretion and nondelegable, and the attempted delegation of the exercise of such duty to the County Superintendent was illegal and a nullity.

▮ The authorities are to the effect that an act done in behalf of another without authority is by positive law or public policy declared to be illegal and void. Such act is not subject to ratification. 2 C.J.S., Agency, § 37, p. 1075. This principle was given recognition by this Court in the early case of Perkins & Hopkins v. Reed, 14 Ala. 536, which authority is cited in Schloss v. Hewlett, 81 Ala. 266, 1 So. 263; Matthews, Finley & Co. v. Sands & Co., 29 Ala. 136; Martin v. Dollar, 32 Ala. 422; and McKenzie v. Clanton, 33 Ala. 528. And we are persuaded a contrary conclusion would run counter to the legislative intent in passing the Teacher Tenure Act. The very laudable purpose of this Act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the "vicissitudes of politics" or the likes or dislikes of those charged with the administration of school affairs.

▮ Such being the manifest purpose of the Act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries. Andrews v. Union Parish School Board, La.App., 184 So. 574; State ex rel. Bass v. Vernon Parish School Board, La. App., 194 So. 74; State ex rel. Kennington v. Red River Parish School Board, La.App., 193 So. 225.

▮ So considered we think it clear enough there was no legislative intent that an unauthorized and illegal notice of this character should become the subject of ratification by the County Board. True, as argued, the Superintendent of Education for the County is a most important official and indispensable in the proper administration of school affairs. And his voice with the County Board no doubt carries great weight, and perhaps justly so. But the "employing board" is the County Board of Education and if the teacher is not to be retained for another year such teacher has the right to expect that such matter be determined upon the judgment of the County Board, as expressed in its written memorials and at a meeting where the board acts as a board and not as individuals. Board of Education v. Watts, supra.

▮ Such a meeting presupposes consultation and discussion—a deliberative

body looking to the best interest of the school system with due regard likewise for justice and fairness to the teachers.

 The Superintendent in giving the teachers notice that his or services will not be desired for the succeeding year is only acting in that capacity as the voice of the Board and not otherwise, and a teacher receiving such notice has a right to assume that preceding its issuance the deliberative body, the County Board, has duly considered and acted upon the matter.

There is nothing in the Act indicating any circuitous action in this regard, such as first a notice by the Superintendent subsequently ratified by the Board. Any such construction would tend to thwart the very purpose of the act, just and fair treatment to the teachers looking to a measure of security in his or her work.

 The notice given by the Superintendent in the instant case makes reference to a recommendation of the local board of trustees, a matter not alluded to by the County Board in any of its motions or resolutions. But such reference adds nothing to the legality of the notice. True it may tend to show good faith. But the bill nowhere charges bad faith or reprehensible conduct on the part of any one connected with the discontinuance of the services of so large a number of teachers.

The sole matter here presented concerns the legality of the proceedings by which these teachers were deprived of continuing service. But we forego further discussion. We are persuaded it was never the legislative intent that the County Superintendent of Education be permitted to give these notices with subsequent ratification by the County Board and that any such interpretation would tend to constitute the Board a mere stamping machine rather than a deliberative body, each acting in conjunction with the other and reaching a conclusion after due consultation and deliberation. The proceedings were wholly invalid.

 Defendant further insists that construing the pleadings most strongly against the pleader, as the rule requires, the bill fails to show that other records of the County Board did not contain the names of teachers to whom the notice was to issue. In the first place we are unable to find any specific ground of demurrer taking the point. But this aside, we have repeatedly stated the rule of construction of pleadings does not require that a strained or unnatural interpretation be placed upon the language used. Eastis et al. v. Beasley et al., 214 Ala. 651, 108 So. 763. So construing the averments of this bill we think it sufficiently discloses that the action of the County Board upon the matter here involved is embraced in what is set out therein and not otherwise, and any other construction would be strained and unwarranted.

 Still another insistence by defendant is that the bill is multifarious. As often stated no universal rule in regard to multifariousness is admitted to be established as to cover all possible cases. The objection is largely a matter of discretion, and every case must, in a measure, be governed by what is convenient and equitable under its own peculiar facts, subject to recognized principles of equity jurisprudence. It is, therefore, always proper to exercise this discretion in such a manner as to discourage future litigation and prevent multiplicity of suits and never so as to do plain violence to the maxim "courts of equity 'delight to do justice, and not by halves'". City of Marion v. Underwood, 231 Ala. 225, 164 So. 296.

 Viewed from a practical standpoint there appears to be no obstacle in the procedure here pursued. Complainants all belong to a given class—all teachers seeking the advantage of an Act passed for their benefit and the rights of each dependent upon a single issue of law and fact as each was given a notice identical in effect and upon the legality of which hinges the rights of all.

Under the prevailing rule of our decisions as indicated in the Underwood case, supra, we are inclined to the view the objection of multifariousness would be without merit.

 But other considerations enter into this particular character of litigation. We have observed that the remedy of specific performance is one created by the act with no detail provisions in regard thereto. We have noted also that this Act was for the benefit of a class—teachers and principals of the public schools of the county employed by the County Board of Education. And when the Act is considered in its entirety we think it was the legislative intent that when the rights of the teachers were dependent upon a common question of law and fact the teachers

---

so similarly situated may maintain one suit for specific performance. We are inclined to the view Equity Rule 31 (238 Ala. XVII), is inapplicable here. But such a bill bears some analogy to a suit by a creditor who sues for himself and all other creditors similarly situated who choose to come in and share in the expense of the litigation. 15 C.J. 1413; 21 C.J.S., Creditors' Suits, § 56.

Though we find no demurrer to this particular aspect of the bill, yet we conclude the reference to other teachers who have not joined in the suit is unobjectionable. These other teachers may have concluded a good defense as to them was available or that otherwise their participation would prove fruitless. However that may be, the offer made in the bill for them to join in the litigation does not render the bill multifarious, for reasons herein discussed.

We have here considered the several matters argued by counsel and conclude the decree overruling the demurrer to the bill is free from error and is due to be affirmed.

It is so ordered.

Affirmed.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.