This is an appeal by plaintiff from a judgment for the defendant following an ore tenus hearing in the trial court below. We reverse and remand.
Plaintiff had been employed at Trenholm State Technical College (Trenholm) until he was removed by action of the president of the college, Thad McClammy. Plaintiff initiated this action for a writ of mandamus and injunctive relief, with the view of reinstatement to his former position, claiming that because he was a tenured employee *Page 1316 
his termination was illegal[1]. By amendment, plaintiff claimed damages and attorneys' fees against McClammy on account of his allegedly wrongful dismissal. Defendant denied that plaintiff was a tenured employee, and also claimed sovereign immunity with regard to the claim for damages and attorneys' fees. The defendant's individual liability, if any, is not made an issue on this appeal.
Following the ore tenus hearing, the trial court made factual findings, concluding that:
 "As painful, unfair, and unjust the firing of the Plaintiff may appear to the Court, it is the opinion and ruling of the Court, that since Plaintiff held a `tenure-track' position for only two years and the third year transferred to the position of `coordinator,' he did not attain tenure at Trenholm State Technical College and was not tenured when he was notified that his contract for the 1981-82 year would not be renewed."
Plaintiff's motion for a new trial was denied, and this appeal ensued. An examination of the facts surrounding the plaintiff's employment and the law applicable thereto shows that the conclusion of the trial court is plainly and palpably wrong.
Plaintiff has posed several issues for our consideration, but these may be reduced to two questions:
(1) Whether plaintiff had attained continuing service status at the time of his dismissal.
(2) Whether the doctrine of mitigation of damages applies in cases of wrongful discharge of tenured personnel.
The record discloses that in March 1971 plaintiff applied to Trenholm for employment as a counselor. He executed an employment application and entered into contract negotiations with M.D. Smiley, then the director of the college, T.L. Faulkner, and one Dr. Bishop. At that time plaintiff possessed a master's degree, granted in 1970 by Troy State University, and a Class A Certificate issued by the State Board of Education for the position of counselor. During his negotiations with Mr. Smiley, he was told by Smiley that he "would be in a tenure-track position as a counselor," with the same benefits as one would have under a teacher contract, earning tenure after three years of employment. Plaintiff signed a teacher contract with Trenholm on April 1, 1971, the pertinent provisions of which recite:
 "WHEREAS, the party of the first part does hereby agree to teach in the Trenholm State Vocational Technical School for the school year 1970-71, or the remaining part of said school year beginning April 19, 1971. . . .
". . . .
 "In the event the State Department of Education shall fail to provide the full State portion of the salary provided, this contract shall be reduced in proportion to the State reduction of funds."
This contract was also executed by M.D. Smiley on behalf of Trenholm. The State Board of Education had delegated to the directors of technical institutes the authority to appoint faculty and staff at the local level.
Plaintiff entered into his employment as counselor at Trenholm on April 19, 1971, for the remainder of the school year, which ended September 30, 1971. On the first day of October 1971, plaintiff entered into another teacher contract with Trenholm for the period from October 1, 1971, to September 30, 1972. Except for the different term and a slight salary increase, this contract contained the same terms as the first contract. Plaintiff did not execute a written contract for the school year October 1, 1972, to September 30, 1973. It was his recollection that written contracts were not issued that year, and this conclusion is not contested. Nevertheless, he continued to work at Trenholm in the position of counselor during that year at the same salary *Page 1317 
as before. On October 1, 1974, however, plaintiff and Smiley executed a written teacher contract for the school year 1974-75, identical to the others except for the different school year and except for the salary, which was increased. He performed the duties of counselor for that period. For the academic year October 1, 1975-September 30, 1976, plaintiff and Smiley followed the same procedure, executing the same contract except for a salary increase. After that, the college did not require written employment contracts until the 1981-82 year; however, plaintiff's duties and functions as counselor remained essentially the same as before, and plaintiff continued to receive periodic salary increases.
For the year October 1, 1981-September 30, 1982, plaintiff entered into a written contract with Trenholm as Veterans-CETA Coordinator. This contract was executed on behalf of Trenholm by the defendant Thad McClammy as president. During this school year, on March 30, 1982, plaintiff was informed by a letter from McClammy as follows: "This is to notify you that your 1981-82 contract will not be renewed." According to plaintiff, this was the first time he had learned from anyone at Trenholm that he was not considered a tenured employee, even though he had been employed there for more than ten continuous years and his salary had increased from $10,128 to $32,747 per annum.
Did plaintiff possess continuing service status at the time of his dismissal?
The trial court found that plaintiff's employment for October 1, 1973, to September 30, 1974, which was formalized by a "Teacher Contract" form as previously used, was changed from "counselor-instructor" to "coordinator." This change was considered by the trial court as a removal from the "tenure track" to an administrative staff position. The trial court further found that plaintiff's service under contract from April 19, 1971, to September 30, 1971, did not count toward obtaining tenure. This result followed, according to the trial court, in part because of the language of Code of 1975, §16-24-2:
 "(a) Any teacher in the public schools who shall meet the following requirements shall attain continuing service status: Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive years and shall thereafter be reemployed in such county or city school system the succeeding school year."
The trial court also relied on the language of a 1974 resolution of the State Board of Education, which in part states: "Only years consisting of employment from October 1 through September 30 shall count toward eligibility in establishing tenure."
There is no issue raised here, nor was there one raised below, concerning the matter of tenure for teachers in state trade or technical schools. By resolution adopted in 1967, the State Board of Education declared that "teachers in the State trade schools shall have the same job security as other public school teachers have and under the same conditions and procedures as contained in the Alabama Teacher Tenure Law."
Do only full academic years of service count toward tenure, or do partial years also count? This precise question was considered in an attorney general's opinion of February 21, 1949, concerning a regularly certified teacher who began work at the beginning of the second semester, January 15, 1946. That opinion held that service under contract in the same system for three consecutive years and re-employment immediately thereafter constituted attainment of tenured status. Special note was taken of the legislature's purpose in enacting the tenure law, as expressed by Chief Justice Gardner in Board ofEducation of Marshall County v. Baugh, 240 Ala. 391,199 So. 822 (1941):
 "The very laudable purpose of this Act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the `vicissitudes of politics' or the likes or dislikes of those *Page 1318 
charged with the administration of school affairs.
 "Such being the manifest purpose of the Act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries. [Citations omitted.]" 240 Ala. at 395, 199 So. at 825.
The attorney general rejected the argument that employment must begin at the beginning of the school year in order to begin earning tenure. Such an effect, he reasoned:
 "would require a teacher originally employed at the beginning of the second semester of a school year to do more in the way of continuous employment and reemployment to attain continuing service status than is required of a teacher originally employed at the beginning of the first semester of a school year. I am convinced that such was not the intention of the legislature. . . ." 1949 Atty.Gen. Quarterly Rep.Vol. 54 at 100.
Shortly thereafter, this Court held, in Board of Education ofRandolph County v. State, 256 Ala. 107, 53 So.2d 371 (1951), that a teacher whose service began in June 1947 and continued through July 29, 1950, had earned continuing service status, and, accordingly, that his contract could not be cancelled without proper statutory proceedings. This decision, and the persuasive reasoning of the cited attorney general's opinion, have convinced us that the service of the plaintiff here, regularly certified and employed under a teacher contract,[2] was intended by the legislature to be one of the class protected by the tenure law at the time he entered into performance of his service under that contract. Accordingly, that period of time from April 19, 1971, to September 30, 1971, did count toward tenured status. Thus, on April 18, 1973, plaintiff had acquired two years' accumulated time toward tenure, and on September 30, 1973, he had attained over five additional months toward that status.
Was plaintiff's employment changed at that point in a manner which would have removed him from the "tenure track" he had occupied up to that time?
The defendant concedes that at the time plaintiff was employed as a counselor under his teacher contract, he had been on the "tenure track." However, defendant's principal argument is that when plaintiff moved into the position of "coordinator" then his position became an administrative one. Retaining that position thereafter, defendant has concluded, plaintiff did not gain continuing service as a counselor and hence he was not entitled to the cancellation process of § 16-24-9, because he did not obtain the third year of service.
In support of this conclusion, defendant offered opinion evidence from an official of the State Board of Education that plaintiff was untenured that third year of service because the budget carried him as a coordinator. This witness testified additionally that "the budget was the contract," and that no contract between the individual (teacher) and the institution existed until the budget itself was approved. Under this reasoning, when plaintiff's job title was changed to "coordinator" and moved to a different location on the institute's budget, he thereby became an administrator andoutside the "tenure track."
Defendant argues also that plaintiff's duties changed in his new position as coordinator and that he was listed as a member of the administrative staff and paid from the approved State Board of Education schedule which classified plaintiff as a "coordinator."
But the record discloses that the defendant's witnesses were neither parties to the plaintiff's initial teacher contracts nor privy to any negotiations or consultations between Smiley and the plaintiff. Plaintiff was originally carried on Trenholm's budget as an "instructor" and his *Page 1319 
duties were those of a "counselor." This, concededly, was a tenure-track position. It follows that if plaintiff's duties continued to be those of "counselor" under his teacher contract, he likewise continued in the "tenure track." The mere fact that he received an increase in salary when his budgetary
classification was changed to "coordinator" would not in and of itself control, since plaintiff had received periodic salary increases as a "counselor."
Moreover, in the Faculty and Staff Handbook of Trenholm for 1971-72, plaintiff was listed under "Administrative Staff" as "Counselor," whose duties were described as including the following:
 "He advises and counsels with students expressing an interest in enrolling in vocational programs at Trenholm State. He receives all applications for enrollment. After reviewing the applications, transcripts . . . and personal interviews . . . [he] makes his recommendation to the director concerning admission. . . .
 "The counselor administers tests and assists in determining prospective vocational students' aptitudes, interests, and abilities. Once a student is enrolled, the counselor follows his progress and continuing vocational interests, and offers assistance with any difficulties encountered. . . .
 "The counselor assists with follow-up studies of graduates and dropouts from vocational programs."
Comparison of this job description and that of the "coordinator" of student services shows that the duties were substantially similar. And, it is not without significance that the Faculty and Staff Handbook for 1976-77, apparently the successor to the Handbook for 1971-72, contains the identical job description for the "Coordinator of Student Affairs," plaintiff's position at that time, as the job description for "Counselor," the position plaintiff occupied in 1971 when he was carried on the budget as an "instructor." We conclude from this evidence that no substantial change in plaintiff's position occurred when his title changed from "counselor" to "coordinator." Cf. Alabama State Tenure Commission v. Green,409 So.2d 850 (Ala.Civ.App. 1982).
Nor was the trial court warranted by the evidence in finding that plaintiff and Mr. Smiley discussed this change. Smiley did not testify. Dickey, the only other participant in such a supposed discussion, denied having any such discussion. He stated that the reason for the change in the title of his position classification was to "pay counselors slightly more than instructors for having a master's degree." And surely, if Smiley had intended a change in Dickey's position from a tenured to a non-tenured "track," he would not have continued to execute annual "teacher" contracts with Dickey from 1973 through 1976.
Plaintiff Dickey also contends that the notice provisions of Code of 1975, § 16-24-12, were offended if the Trenholm authorities were found to have changed his teaching contract on October 1, 1973. That section mandates that:
 "Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered reemployment for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the fifteenth day of June. . . ."
The fact that Dickey received a salary increase under the 1973 contract does not constitute a waiver of such notice. This Court has heretofore ruled that this statute must be literally applied. Stollenwerck v. Talladega County Board of Education,420 So.2d 21 (Ala. 1982). Accordingly, any attempt to terminate Dickey's "tenure-track" position without the requisite notice would have been contrary to law.
Finally, it is well established that a transfer of positions within the same system *Page 1320 
does not result in a loss of tenure already earned. MarshallCounty Board of Education v. State Tenure Commission, 291 Ala. 273, 280 So.2d 114 (1973). Dickey's appointment as Veterans-CETA Coordinator in October 1981, therefore, did not negate his tenure earned earlier under his teacher contract.
The second issue presented by the petitioner was not considered by the trial court; therefore, we pretermit any consideration of it here.
Being mindful of the presumption of correctness indulged in favor of the findings and decision of the trial court when based upon an ore tenus proceeding, nevertheless we conclude that decision must be overturned as palpably wrong when, as in this instance, that presumption is overcome by both the law and the evidence. The decree of the court below must be, and it is, reversed, and this cause is remanded to that court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, SHORES, EMBRY and ADAMS, JJ., concur.
[1] The parties have not raised, and the Court will not discuss, the procedure used by plaintiff to review his tenure status. Compare Code of 1975, §§ 16-24-9, -10; 16-24-36 (appeals to State Tenure Commission).
[2] "The term `teacher,' as employed in this chapter, is deemed to mean and include all persons regularly certified by the teacher certificating authority of the state of Alabama who may be employed as instructors, principals or supervisors in the public elementary and high schools of the state of Alabama. . . ." Code of 1975, § 16-24-1.