ADAMS, Justice
(dissenting).
I respectfully dissent. The majority holds that a city superintendent of schools is not a “supervisor” within the meaning given that term in the Teacher Tenure Act, Ala.Code 1975, §§ 16-24-1 to -38, and, consequently, cannot acquire continuing service status under that Act. In order to do so, it is necessary to overrule Ex parte Weaver, 559 So.2d 178 (Ala.1989), an opinion less than four years old. The majority, however, does not acknowledge this result, stating, instead, that it is merely editing *1027 “some of the dicta” in Weaver. Specifically, the majority states:
“The opinion in Ex parte Weaver was overwritten and some of the dicta are wrong, misleading, and due to be overruled, especially this overly broad statement that appears on page 183:
“ ‘Based on the foregoing, we hold that the general definition of “teacher” in § 16-24-1 ... includes a county superintendent of education.’ ”
(Emphasis added.) Not only does the majority mischaracterize an express holding as “dictum,” but ignores the fact that Weaver also contained an alternative holding — one, which, as the following remarks point out, bears an even greater significance to this case.
In Ex parte Oden, 495 So.2d 664 (Ala.1986), we considered whether a tenured principal had, by resigning his office to take a position as a supervisor of transportation, forfeited the incidents of tenure he had acquired in his former position. After discussing the conspicuous absence of a definition of the term “supervisor” in the “ ‘Education’ title of the Code,” id. at 666, we cited two definitions of that term. First, “to supervise,” we stated, is “ ‘to coordinate, direct, and inspect continuously and at first hand the accomplishment of: oversee with the powers of direction and decision the implementation of one’s own or another’s intentions: superintend.’ ” Id. (quoting Webster’s Third New International Dictionary (1971)). Second, we said, a “supervisor” is “ ‘one that supervises a person, group, department, organization, or operation: as ... an officer of a school system who assists and supervises teachers in curriculum planning and methods of instruction or in the teaching of a special subject (supervisor of music) (art supervisor).’ ” Id.
Finding “[njothing in the Code” to suggest “that the legislature used the term [‘supervisor’ in §§ 16-24-1 and -2] in the limited or technical sense of the example last quoted,” we reasoned that “the loose, general, and undefined use of the term in the Code require[d] that the general definition of ‘supervisor’ should apply” to the position of a supervisor of transportation. Ex parte Oden, 495 So.2d at 667. (Emphasis added.)[1] Consequently, we held that the instructor who had acquired tenure pursuant to the “limited and technical” definition as a principal, did not forfeit the incidents of tenure by resigning that position and assuming another position as a transportation supervisor, which position was subject to the “general definition.”
Implicit in our holding was the suggestion that if the transportation position had fit the “limited or technical” definition of supervisor, Oden could have acquired the incidents of tenure by virtue of that position suo jure. This suggestion subsequently formed the basis of a holding in Ex parte Weaver.
In Weaver, we considered whether a tenured instructor had, by her election to, and service in, the position of county superintendent of education, forfeited the incidents of tenure acquired in her former position. As in Oden, we discussed the absence of a definition of the term “supervisor” in the “ ‘Education’ title of the Code,” Ex parte Weaver, 559 So.2d at 181, and, contrary to what the majority says today, held that Weaver was able to maintain her continuing service status while serving as county superintendent of education, because, in that position, she fit “the general definition of ‘supervisor.’ ” Id. at 182 (emphasis added).
More significantly, however, we expressly declared that our holding regarding the superintendent’s status did not rest solely on the conclusion that Weaver fit the general definition of supervisor, but, alternatively, on the determination that she fit the “ ‘limited and technical’ definition of ‘supervisor’ given in Oden.” Ex parte Weaver, *1028 559 So.2d at 182 n. 1. In that connection, we stated:
“Chapter 9, entitled ‘County Superintendents of Education,’ § 16-9-1, provides a description of a superintendent’s duties:
“ ‘There shall be a county superintendent of education in each county of this state who shall act as the chief executive officer of the county board of education and who shall also be secretary of the county board of education. ...’
“Section 16-9-2(a) provides that the superintendent of education shall be ‘a person of recognized ability as a school administrator’ holding a ‘certificate in administration and supervision.’ (Emphasis added [in Weaver].)
“Among other duties, the superintendent of education must prepare for approval by the county board of education rules governing admission requirements to junior and senior high schools (§ 16-9-19); prescribe courses of study for the county schools (§ 16-9-21); prepare rules for the grading and standardization of the county schools (§ 16-9-22); and visit the schools, observe the management, and give suggestions for the improvement of the schools (§ 16-9-26).”
Ex parte Weaver, 559 So.2d at 182. This alternative holding effectively entitled a transferee fitting the “limited and technical” definition of “supervisor” to the incidents of tenure by virtue of employment in the position to which she transferred. Unlike the majority opinion in the present case, which characterizes the operative language of Weaver as “dicta,” the import of Weaver appears to have been fully comprehended by the defendants in the present case, who, in order to avoid the result the Weaver holdings obviously require in this case, urged us to overrule Weaver. The result in this case simply cannot be reconciled with Weaver by finetuning the language of that case. The inconsistency is basic and fundamental — a fact the majority opinion ignores.
When I concurred in Weaver, I both understood, and intended, the opinion’s obvious consequences, unlike the majority, which now states that “we did not intend to hold that the legislature had extended the protections of the teacher tenure law to a superintendent.” 603 So.2d at 1026. When I concurred in Weaver, I did not believe — as the majority states — “that the legislature intended for ... school boards to have greater flexibility in choosing their respective superintendents than the law would allow if a city school superintendent could attain continuing service status,” nor I am convinced of that proposition by the arguments in this case.
On the contrary, the overriding purpose of the Teacher Tenure Act was to “free” the affected personnel, “at least to a measurable extent, from the ‘vicissitudes of politics,’ ” Dickey v. McClammy, 452 So.2d 1315, 1317 (Ala.1984) (quoting Board of Educ. v. Baugh, 240 Ala. 391, 395, 199 So. 822, 825 (1941)); hence, the proviso in § 16-24-8 expressly prohibiting contract cancellation “for political or personal reasons” (emphasis added). Indeed, there is every reason to assume that the legislature intended to insulate those school officials whose decisions are most difficult and far-reaching, and, consequently, the most politically divisive, from the capricious “vicissitudes of politics.” To these high-level decision makers, the Teacher Tenure Act’s stated objectives apply with the greatest cogency. Because I believe that the majority fails to deal adequately and forthrightly with this Court’s holdings in Weaver and misperceives the intent of the legislature, I must respectfully dissent.

. Section 16-27-1, found in the chapter regulating "transportation of pupils,” provides in pertinent part:
"The state board of education shall prescribe rules and regulations:
"(1) Requiring all local boards of education which provide transportation services for pupils going to and from public elementary and secondary schools of Alabama ... to employ a competent supervisor or manager of such transportation services_”
See Ex parte Oden, 495 So.2d at 666 (quoting § 16-21-1 and emphasizing the word “supervisor").