On Application for Rehearing

BRYAN, Judge.
This court’s opinion of April 13, 2012, is withdrawn, and the following is substituted therefor.
Vannessa McGlathery appeals from a judgment granting the Rule 12(b)(6), Ala. R. Civ. P., motions to dismiss of Alabama Agricultural and Mechanical University (“the university”); the Board of Trustees of the university (“the board”); the individual members of the board (“the board members”), in their official capacities;[1] Dr. Andrew Hugine, Jr. (“the president”), the president of the university, in his official capacity; and Nancy Washington Vaughn, the university’s director of human resources, in her individual capacity. We affirm in part, reverse in part, and remand.

Procedural History

On December 16, 2010, McGlathery sued the university, the board, the board members, the president, Vaughn, and Dr. Tommy Coleman, a member of the university’s faculty.[2] McGlathery’s complaint contained the following pertinent factual allegations:
“7. Plaintiff, Vannessa McGlathery commenced employment with the University as a Technical Assistant in approximately 1998.
“8. In approximately 2006, Ms. McGlathery was assigned to serve as Administrative Support Coordinator at the AAMU Research Institute (‘AAMU-RP).
“9. AAMURI’s facilities are located on the University’s campus, but AAMURI is not a state agency and is not a subsidiary of the University. Rather, AAMURI is a Section 501(c)(3) nonprofit corporation and is a private entity independent of the University.
[[Image here]]
“11. While working at AAMURI, Ms. McGlathery served as a dual employee of both the University and AAMURI.
[[Image here]]
“22. On or about July 20, 2010, Nancy Washington Vaughn issued a letter stating that Ms. McGlathery’s employment with the University would end on August 6, 2010.
“23. Ms. Vaughn has no authority to terminate any employee of the University.
“24. On or about August 6, 2010, Ms. McGlathery instituted a grievance alleging that her employment with the University had been improperly terminated.
“25. On or about August 11, 2010, Ms. Vaughn issued a letter to Ms. McGlath-ery stating that Ms. McGlathery was not eligible to file a grievance because she had not been an employee of the University. Ms. Vaughn’s letter to Ms. McGlathery stated in pertinent part as follows:
“ ‘The Office of Human Resources has determined that the matter for which you seek redress is not subject to the *440 [university] grievance procedure because you are an employee of the AAMURI.... As an employee of the AAMURI, your employment rights have not [sic] adversely affected due to a violation of [the university’s] policies and procedures. Therefore, [the university] is constrained from approving your recent request for a grievance hearing.’
“26. The Defendants are legally bound to follow the policies set forth in the University’s Staff Handbook, adopted by the Board of Trustees on October 29, 1993.
“27. The Staff Handbook is applicable to Ms. McGlathery’s employment with the University.
“28. On or about September 1, 2010, Ms. McGlathery filed an amended and supplemental grievance alleging that she was indeed an employee of the University and that the University had not abid-ed by its adopted policies in attempting to terminate her employment.
“29. The Defendants have failed or refused to respond to Ms. McGlathery’s amended and supplemental grievance.”
Based on those factual allegations, McGlathery stated five claims against the university, the board, the board members, and the president (collectively referred to as “the university defendants”) and one claim against Vaughn. The first claim against the university defendants asserted that McGlathery’s dismissal violated § 16-49-23, Ala.Code 1975, because, she asserted, that Code section granted the board the exclusive and nondelegable power to dismiss university employees. That claim sought a judgment declaring that § 16-49-23 granted the board the exclusive and nondelegable power to dismiss university employees, that her dismissal violated § 16-49-23, that she was entitled to reinstatement, and that she was entitled to wages and benefits she had lost as a result of her dismissal.
McGlathery’s second claim against the university defendants also asserted that her dismissal violated § 16-49-23 because, she asserted, that Code section granted the board the exclusive and nondelegable power to dismiss university employees; however, the second claim sought a writ of mandamus directing the university defendants to reinstate McGlathery and to pay her the wages and benefits she had lost as a result of her dismissal.
McGlathery’s third claim against the university defendants asserted, as an alternative to her first and second claims, that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal violated policy 9.3 of the university’s staff handbook (“policy 9.3”) because, she asserted, she had not been given three weeks’ notice of her dismissal and her dismissal had not been approved by the president. McGlathery’s complaint alleged that policy 9.3 stated:
“ ‘Staff employees are employees at will and may be terminated without cause by the University upon three weeks notice. Such terminations must ultimately be approved by the President. Termination without cause shall not affect the employee’s right to recover unemployment compensation.’ ”
The third claim against the university defendants sought a judgment declaring that McGlathery’s dismissal was invalid because it violated policy 9.3, that she was entitled to reinstatement, and that she was entitled to wages and benefits she had lost as a result of her dismissal.
McGlathery’s fourth claim against the university defendants asserted that her dismissal without three weeks’ notice and without the approval of the president constituted a breach of contract and sought *441 reinstatement and the wages and benefits she had lost as a result of her dismissal. McGlathery’s fifth claim against the university defendants asserted that her dismissal was not “in accordance with the laws of the State of Alabama or the policies and procedures of the University” and sought a writ of mandamus directing the university defendants to reinstate her and to pay her the wages and benefits she had lost as a result of her dismissal.
McGlathery’s sole claim against Vaughn asserted that Vaughn had intentionally interfered with McGlathery’s business or contractual relations with the university and sought compensatory and punitive damages.
The university defendants and Vaughn filed Rule 12(b)(6) motions to dismiss, and McGlathery filed a pleading in opposition. Following a hearing, the trial court, on April 21, 2011, entered a judgment granting the Rule 12(b)(6) motions. Because it did not dispose of McGlathery’s claim against Dr. Coleman, the trial court certified the judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.
In its judgment, the trial court concluded that Article I, § 14, Alabama Constitution of 1901 (“§ 14”), barred all McGlathery’s claims against the university defendants insofar as those claims sought wages and benefits. The trial court further concluded that McGlathery’s first two claims against the university defendants failed to state a valid claim for declaratory relief and a writ of mandamus, respectively, because § 16-49-28 granted the board the power to delegate its power to dismiss university employees. The trial court concluded that McGlathery’s third claim against the university defendants failed to state a valid claim for declaratory relief because the staff handbook did not constitute an “administrative regulation” for purposes of the declaratory-relief exception to § 14. The trial court concluded that the fourth claim against the university defendants failed to state a valid claim for a writ of mandamus because policy 9.3 stated that staff employees of the university were employees at will who could be dismissed without cause and the language stating that dismissals without cause were to be made with three weeks’ notice and with the ultimate approval of the president did not constitute contractually binding promises that would support a breach-of-contract claim.
The trial court concluded that the fifth claim against the university defendants failed to state a valid claim for a writ of mandamus because McGlathery’s dismissal did not violate § 16-49-28 and the language of policy 9.3 stating that dismissals without cause were to be made with three weeks’ notice and with the ultimate approval of the president did not constitute contractually binding promises.
The trial court concluded that McGlath-ery’s claim of intentional interference with business or contractual relations against Vaughn failed to state a claim upon which relief could be granted because Vaughn, as a co-employee of McGlathery, was not a “third party” or a “stranger” to the relationship between McGlathery and the university and because Vaughn was entitled to State-agent immunity.
On May 20, 2011, McGlathery filed a postjudgment motion, which the trial court denied on June 15, 2011. McGlathery then timely appealed to this court. Due to lack of jurisdiction, we transferred the appeal to the supreme court, which transferred it back to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“On appeal, a dismissal is not entitled to a presumption of correctness. Jones *442 v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993).

Analysis

Initially, we note that McGlathery has not argued on appeal that the trial court erred in concluding that § 14 barred her claims against the university defendants insofar as those claims sought wages and benefits. Therefore, she has waived the issue whether the trial court erred in that regard. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”). Consequently, we affirm the trial court’s judgment insofar as it concluded that § 14 barred McGlathery’s claims against the university defendants insofar as those claims sought wages and benefits.
We also note that McGlathery has not argued on appeal that the trial court erred in dismissing her claims against the university defendants insofar as those claims were based on the university defendants’ alleged violation of policy 9.3. Therefore, she has waived the issue whether the trial court erred in that regard. Id. Consequently, we affirm the trial court’s judgment insofar as it dismissed McGlathery’s claims against the university defendants insofar as those claims were based on the university defendants’ alleged violation of policy 9.3.
McGlathery does argue that the trial court erred in concluding that § 16-49-23 granted the board the power to delegate its power to dismiss university employees. Before June 9, 2011,[3] § 16-49-23 provided:
“The board of trustees has the power to organize the university by appointing a president, whose salary shall be fixed by the board, and by employing a corps of instructors, who shall be nominated to the board in writing by the president and who shall be styled the faculty of the university and such other instructors and officers as the interests of the university may require; and to remove any such instructors or other officers, and to fix their salaries or compensation and increase or reduce the same at its discretion; to regulate, alter or modify the government of the university, as it may deem advisable; to prescribe courses of instruction, rates of tuition and fees; to confer such academic and honorary degrees as are usually conferred by institutions of similar character; and to do *443 whatever else it may deem best for promoting the interest of the university.”
(Emphasis added.)
McGlathery argues that the language of § 16-49-23, as it existed before June 9, 2011, providing that the board “has the power ... to remove any such instructors or other officers” grants the board the exclusive and nondelegable power to dismiss university employees. The trial court, on the other hand, concluded that the language of § 16-49-23 providing that the board “has the power ... to regulate, alter or modify the government of the university, as it may deem advisable,” grants the board the power to delegate its power to dismiss university employees.
McGlathery cites Board of Education of Marshall County v. Baugh, 240 Ala. 391, 199 So. 822 (1941), in support of her argument that the language of § 16-49-23, as it existed before June 9, 2011, providing that the board “has the power ... to remove any such instructors or other officers” grants the board the exclusive and nondelegable power to dismiss university employees. In Baugh, the supreme court considered the issue whether the power to dismiss teachers granted to local boards of education by section 10 of the Teacher Tenure Act (“section 10”) was delegable. Section 10 provided:
“ ‘Any teacher in the public schools, whether in continuing service status or not, shall be deemed reemployed for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school year in which the teacher is employed; provided, however, that in no case shall such notice be given the teacher later than the first day of May of the termination of such employment, and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the first day of June.’ ”
Baugh, 240 Ala. at 394, 199 So. at 824 (emphasis added). The supreme court held that the power to determine whether a teacher should be dismissed is a power that “involves a delicate exercise of a wise discretion,” that the legislature had granted that discretionary power to the local boards of education, and that the local boards of education could not delegate that discretionary power. 240 Ala. at 395, 199 So. at 825. Baugh exemplifies the rule that “[w]hen the legislature has made clear its intent that one public official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization.” 63C Am.Jur.2d Public Officers and Employees § 229 (2009). “However, this rule should not be applied when the legislature provides statutory authorization for the delegation of such powers.” Id.
Section 10 contained no language indicating that the legislature intended to grant the local boards of education the power to delegate their power to determine whether teachers should be dismissed. However, § 16-49-23, as it existed before June 9, 2011, not only granted the board the discretionary power to determine whether university employees should be dismissed but also granted it the power “to regulate, alter or modify the government of the university, as it may deem advisable[,] ... and to do whatever else it may deem best for promoting the interest of the university.”
In IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala.1992), the supreme court stated:
*444 “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687 (Ala.1991).”
Section 6-49-28, as it existed before June 9, 2011, did not contain any language prohibiting the board from delegating its power “to remove any such instructors or other officers,” and the language granting the board the power “to regulate, alter or modify the government of the university, as it may deem advisable!,] ... and to do whatever else it may deem best for promoting the interest of the university,” is broad enough to include the power to delegate its power “to remove any such instructors or other officers.”
McGlathery, however, argues that the board’s power “to remove any such instructors or other officers” should be treated as an exception to its power “to regulate, alter or modify the government of the university, as it may deem advisable!,] ... and to do whatever else it may deem best for promoting the interest of the university” and cites Murphy v. City of Mobile, 504 So.2d 248 (Ala.1987), in support of that argument. In Murphy, four of the seven members of the Mobile City Council voted in favor of a resolution that Michael Thomas Murphy be appointed to the office of municipal judge; three members voted against it. The presiding officer of the council declared that the resolution had failed because it did not receive a favorable vote from five members. The presiding officer’s decision was based on § 11-44C-28, Ala.Code 1975, which provided that an affirmative vote of at least five members of the council was sufficient for the passage of any resolution. Murphy contended that the resolution had indeed passed because a majority of the members of the council had voted in favor of it and § 12-14-30, Ala.Code 1975, provided that municipal judges were to be appointed by a vote of a majority of the council’s members. The two Code sections conflicted in the ease of a seven-member council because one required five affirmative votes while the other, in the case of a seven-member council, required only four affirmative votes. The supreme court held that, because § 12-14-30 addressed the appointment of municipal judges specifically, while § 11-44C-28 addressed council business in general, § 12-14-30 should be construed as an exception to § 11-44C-28 and, therefore, that four affirmative votes were sufficient to pass the resolution appointing Murphy.
The present case is distinguishable from Murphy, however, because the language of § 16-49-23, as it existed before June 9, 2011, granting the board the power “to remove any such instructors or other officers” does not conflict with the language granting the board the power “to regulate, alter or modify the government of the university, as it may deem advisable!,] ... and to do whatever else it may deem best for promoting the interest of the university.” Likewise, there is no inherent conflict in the legislature’s granting the board the power to dismiss university employees and its granting the board the power to delegate its power to dismiss university employees.
*445 Accordingly, we conclude that the language of § 16-49-23, as it existed before June 9, 2011, granting the board the power to “to regulate, alter or modify the government of the university, as it may deem advisable[,] ... and to do whatever else it may deem best for promoting the interest of the university” granted the board the power to delegate its power to dismiss university employees and, therefore, that Baugh is not controlling in the present case.
McGlathery has cited for the first time in her application for rehearing two other cases that are similar to Baugh, i.e., Chavers v. State Personnel Board, 357 So.2d 662 (Ala.Civ.App.1978), and Blanchard v. Lansing Community College, 142 Mich.App. 446, 370 N.W.2d 23 (1985). However, Chavers and Blanchard are distinguishable from the present case for the same reason as Baugh.
McGlathery also argues that the amendment of § 16-49-23 that became effective on June 9, 2011, indicates that the board did not have the power to delegate its power to dismiss university employees under § 16-49-23 as it existed before June 9, 2011. As amended effective June 9, 2011, § 16-49-23 provides:
“The board shall not engage in activity that interferes with the day-to-day operation of the university. The primary responsibility of the board of trustees is to set policy for the university and prescribe rates of tuition and fees. The board also has the power to organize the university by appointing a president, whose salary shall be fixed by the board. The president shall appoint a corps of instructors who shall be styled the faculty and such other instructors and officers as the interest of the university may require, remove any instructors or officers, fix their salaries or compensation, and define the authority or duty of such instructors or officers. The president may regulate, alter, and modify the organization of the university, subject to review and concurrence of the board. The president shall prescribe courses of instruction within academic programs that have been approved by the board. The president may confer academic degrees and such honorary degrees as are usually conferred by institutions of similar character upon the recommendation of the faculty.”
The June 9, 2011, amendment of § 16-49-23 granted the president some of the powers that its predecessor had granted to the board; however, it contains no language indicating that its predecessor prohibited the board from delegating its power to dismiss university employees. Therefore, we find no merit in McGlath-ery’s argument that the June 9, 2011, amendment indicates that the board did not have the power to delegate its power to dismiss university employees before June 9, 2011. Accordingly, for the reasons discussed above, we conclude that the trial court did not err in determining that § 16-49-23 granted the board the power to delegate its power to dismiss university employees, and we affirm the judgment of the trial court insofar as it dismissed McGlath-ery’s claims based on the allegation that § 16-49-23 granted the board the exclusive and nondelegable power to dismiss university employees.
McGlathery also argues that, even if the trial court correctly concluded that § 16-49-23 granted the board the power to delegate its power to dismiss university employees, it erred by assuming that a delegation of that power by the board had occurred in the absence of any evidence establishing that it had occurred. McGlathery’s first and second claims asserted that her dismissal violated § 16-49-23 because,- she asserted, that Code section *446 granted the board the exclusive and non-delegable power to dismiss university employees. Those claims did not assert as an alternative claim that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal was invalid because the board had not taken any action to delegate its power to dismiss university employees. McGlathery’s third claim asserted, as an alternative to her first and second claims, that, if § 16^9-23 granted the board the power to delegate its power to dismiss university employees, her dismissal violated policy 9.3 because, she asserted, she had not been given three weeks’ notice of her dismissal and her dismissal had not been approved by the president. However, McGlathery’s third claim did not assert as an alternative claim that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal was invalid because the board had not taken any action to delegate its power to dismiss university employees. Likewise, none of her other claims asserted a claim that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal was invalid because the board had not taken any action to delegate its power to dismiss university employees. Moreover, in her pleading responding to the motions to dismiss, McGlathery did not argue that the motions to dismiss should be denied because she was asserting a claim that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal was invalid because the board had not taken any action to delegate its power to dismiss university employees. Indeed, we find no indication in the record that McGlathery argued to the trial court that she was asserting such a claim at any time before she filed her postjudgment motion. She did argue that she was asserting such a claim in her postjudgment motion; however, at that point, that argument constituted a new legal argument being presented for the first time in a postjudgment motion.
“ ‘ “[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.” ’ ” Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010) (quoting Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668, 678 (Ala.2007), quoting in turn Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988)). The trial court’s order denying McGlathery’s postjudgment motion stated: “This matter comes before the Court on [McGlathery’s] Motion to Alter, Amend, or Vacate filed on May 20, 2011. Having reviewed and considered the motion and the response by Defendants thereto, the Court hereby DENIES the motion at this time.” In Special Assets, supra, Special Assets, L.L.C. (“Special Assets”), and First Properties, L.L.C. (“First Properties”), filed a post-judgment motion in which they presented a new legal argument. The trial court’s order denying the postjudgment motion stated: “ 'After consideration of [First Properties and Special Assets’ post-judgment motion] and [Chase Finance’s] response thereto, the Court concludes that the motion is due to be denied.’ ” 991 So.2d at 676-77. First Properties and Special Assets contended on appeal that the word “consideration” in that order meant that the trial court had considered and ruled on the merits of the new legal argument they had presented in their postjudgment motion. The supreme court rejected that argument, stating that the general language the trial court had used in denying the postjudgment motion did not indicate that it had considered the merits of the new legal argument and that the supreme court would not presume that the trial court had done so. 991 So.2d at 677-78.
*447 Like the trial court’s general language denying the postjudgment motion in Special Assets, the trial court’s general language denying McGlathery’s postjudgment motion in the present case does not indicate that the trial court considered the merits of the new legal argument McGlath-ery had presented in that motion, and we will not presume that it did so. Id.
McGlathery has not offered any justification for her delay in presenting her new legal argument. Therefore, the trial court did not exceed its discretion in refusing to grant McGlathery’s postjudgment motion on the basis of her new legal argument. See Espinoza, 46 So.Sd at 416. When a trial court does not exceed its discretion in refusing to consider a new legal argument in a postjudgment motion, an appellate court will not reverse the judgment of the trial court on the basis of that new legal argument. Id. Therefore, in the present case, because the trial court did not exceed its discretion in refusing to consider the new legal argument in McGlathery’s postjudgment motion, we will not reverse the trial court’s judgment on the basis of that new legal argument. Id.
On rehearing, McGlathery argues for the first time that the trial court erred because, she says, it did not give her an opportunity to amend her complaint to allege a claim that, if § 16-49-23 granted the board the power to delegate its power to dismiss university employees, her dismissal was invalid because the board had taken no action to delegate that power. However, appellate courts do not consider arguments raised for the first time on rehearing. See Water Works & Sewer Bd. of Selma v. Randolph, 838 So.2d 604, 608-09 (Ala.2002) (opinion on application for rehearing).
McGlathery also argues that the trial court erred on the ground that it stated in its judgment that, “if [McGlathery’s] contentions [that § 16-49-23 did not permit the board to delegate its powers] were correct, then [McGlathery] must also allege that her employment with the University was approved by the Board.” However, because we have concluded that the trial court correctly concluded that § 16-49-23 permitted the board to delegate its powers, the issue whether that statement of the trial court is correct is moot.
McGlathery next argues that the trial court erred in dismissing her claim of intentional interference with business or contractual relations against Vaughn in her individual capacity on the ground that Vaughn, as a co-employee of McGlathery, was not a “third party” or a “stranger” to the relationship between McGlathery and the university because, McGlathery says, she alleged in her complaint that Vaughn’s actions were beyond her authority and malicious.
The supreme court has held that a co-employee of a plaintiff will be deemed a third party or a stranger to a business or contractual relationship between the plaintiff and the employer only if the co-employee was “ ‘ “acting outside [his or her] scope of employment and [was] acting with actual malice....’”” Hanson v. New Tech., Inc., 594 So.2d 96, 102 (Ala.1992) (quoting Perlman v. Shurett, 567 So.2d 1296, 1297 (Ala.1990), quoting in turn Hickman v. Winston Cnty. Hosp. Bd., 508 So.2d 237, 239 (Ala.1987)). However, in this context, the supreme court appears to use the phrase “scope of authority” interchangeably with the phrase “scope of employment.” For example, in Hanson, after quoting Perlman for the proposition that a co-employee could be liable for intentional interference with business or contractual relations only if the co-employee was “‘“acting outside [his or her] scope of employment and [was] acting with actual *448 malice,” ’ ” 594 So.2d at 102, the supreme court affirmed a summary judgment in favor of a co-employee defendant with respect to the plaintiffs claim of intentional interference with business or contractual relations because the supreme court concluded “not only that [the plaintiff] failed to establish that [the co-employee defendant] was acting outside the scope of her authority ..., but also that [the plaintiff] failed to establish that [the co-employee defendant’s] actions were taken maliciously,” 594 So.2d at 103 (emphasis added). McGlathery alleged that Vaughn was acting without authority and maliciously when she allegedly dismissed McGlathery. We conclude that those allegations sufficiently alleged that Vaughn was a third party or a stranger to the relationship between McGlathery and the university to withstand Vaughn’s motion to dismiss. See Hanson. Therefore, the trial court erred insofar as it concluded that McGlathery’s claim of intentional interference with business or contractual relations failed to state a claim upon which relief could be granted based on its determination that McGlath-ery had failed to allege that Vaughn was a third party or a stranger to the relationship between McGlathery and the university.
McGlathery also argues that the trial court erred in dismissing her claim of intentional interference with business or contractual relations against Vaughn in her individual capacity on the ground that Vaughn was entitled to State-agent immunity. Among other things, McGlathery argues that she alleged that Vaughn’s actions “were willful, malicious, fraudulent, in bad faith, beyond her authority, and/or under a mistaken interpretation of law” and that those allegations were sufficient to defeat a motion to dismiss based on State-agent immunity. In Ex parte Butts, 775 So.2d 173, 177-78 (Ala.2000), a majority of the supreme court adopted the test for determining when State employees sued in their individual capacities are entitled to assert the defense of State-agent immunity set forth in the plurality opinion in Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000). Under that test, a State agent “ ‘shall not be immune from civil liability in his or her personal capacity ... when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’ ” Butts, 775 So.2d at 178 (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000)). Thus, McGlathery’s allegations that Vaughn’s actions “were willful, malicious, fraudulent, in bad faith, beyond her authority, and/or under a mistaken interpretation of law” were sufficient to defeat a motion to dismiss based on State-agent immunity. Therefore, the trial court erred insofar as it concluded that McGlathery’s claim of intentional interference with business or contractual relations failed to state a claim upon which relief could be granted based on the defense of State-agent immunity.
Accordingly, we reverse the trial court’s judgment insofar as it dismissed McGlath-ery’s claim of intentional interference with business or contractual relations against Vaughn in her individual capacity and remand the cause for further proceedings consistent with this opinion. In all other respects, we affirm the trial court’s judgment.
APPLICATION FOR REHEARING GRANTED; OPINION OF APRIL 13, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The board members are Dr. Raymond Burse, James Montgomery, Odysseus M. Lanier, Rev. D. Tom Bell, Jr., Norman Hill, Chasi-dy Privett, Chris Robinson, Jerome Williams, Andre Taylor, and Lucien B. Blankenship.

. Dr. Coleman is not a party to this appeal; therefore, we have omitted any discussion of the claim against him

. Section 16-49-23 was amended effective June 9, 2011.