Rel: May 17, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0881

_____

**The Water Works and Sewer Board of the City of Prichard**

**v.**

**Synovus Bank**

**Appeal from Mobile Circuit Court**
**(CV-23-901332)**

SELLERS, Justice.

The Water Works and Sewer Board of the City of Prichard ("the

Board") appeals from an order of the Mobile Circuit Court appointing a

receiver to administer and operate the Board's waterworks and sewer system ("the system").  We affirm.

## I.  Facts and Procedural History

On November 1, 2019, the Board entered into a trust indenture ("the indenture") with Synovus Bank, pursuant to which Synovus agreed to serve as the trustee for the Board's issuance of $55.78 million in "Series 2019 Bonds." The Board issued the bonds to refund its existing "Series 2018 Bonds" and to fund capital improvements for the aging infrastructure of the system.[1] Section 12.1 of the indenture defines the various circumstances that constitute an "event of default" under the indenture.   The indenture also sets forth the rights and remedies available to the trustee upon the "occurrence and continuation" of any default.   Relevant here, § 12.2(c) of the indenture provides:

> "<u>The Trustee shall be entitled upon or at any time after the commencement of any proceedings instituted with respect to an Event of Default, as a matter of strict right, upon the order of any court of competent jurisdiction, to the appointment of a receiver to administer and operate the System</u>, with power to fix and charge rates and collect revenues sufficient to provide

---

[1]In its "Official Statement" to prospective bondholders, the Board represented that approximately $22.8 million of the proceeds of the bonds would be applied to the redemption of previously issued Series 2018 bonds and that the remaining balance would be used to fund capital improvements.

for the payment of the Bonds and any other obligations outstanding against the System or the revenues thereof and for the payment of expenses of operating and maintaining the System and with power to apply the income and revenues of the System in conformity with the Indenture."

(Emphasis added.)

In June 2023, Synovus, in its capacity as the trustee under the indenture ("the trustee"), commenced a breach-of-contract action against the Board, alleging that the Board had defaulted in several respects under the indenture and requesting, among other things, the appointment of a receiver pursuant to § 12.2(c) of the indenture. In its complaint, the trustee maintained that a receiver was necessary not only because the Board had defaulted under the indenture, but also because the system was suffering from "gross mismanagement, a lack of fiscal integrity, and endangering public safety by failing to maintain vital system infrastructure." The trustee also filed an emergency motion, requesting that the trial court appoint John S. Young, Jr., LLC ("Young"), as the receiver to administer and operate the system.[2]

---

[2]The indenture defines "System," in relevant part, as "the entire water supply and distribution system and sanitary sewer system owned by the Board."

3

Following a two-day hearing, the trial court entered a detailed order, finding that the Board was in default of numerous provisions of the indenture and that it had not diligently pursued appropriate corrective action for those defaults.[3] The trial court appointed Young ("the receiver") to administer and operate the system. In its order, the trial court found that the trustee was entitled to the appointment of a receiver based solely on § 12.2(c) of the indenture. However, the trial court also found other compelling circumstances that justified the appointment of a receiver:

> "As a result of years of mismanagement and fiscal irresponsibility, [the Board's] assets have dissipated and fallen into ruin. The undisputed evidence showed that 60% of the water purchased by [the Board] is lost through the [Board's] dilapidated … system before it reaches its consumers. That is a staggering figure, and it constitutes compelling evidence that the system is in crisis -- without regard to the fiscal fraud, theft and abuse which occurred on [the Board's] watch. This is not a situation where a natural disaster (hurricane, earthquake, etc.) caused immediate and unforeseen damage to the infrastructure of [the system], but instead, the dilapidated state of [the Board's] system is the

---

[3]The defaults included the Board's failure to make the full interest payment due on the bonds on May 1, 2023; to replenish the reserve fund after money in that fund was used to make the May 1, 2023, interest payment on the bonds; to reimburse the reasonable fees of the trustee and the trustee's attorney; to provide audits of its books and records; and to fix and maintain rates sufficient to provide annual net income to satisfy its debt obligations on the bonds.

result of years of poor planning, mismanagement or worse. Consequently, when seeking a badly needed bond issue, [the Board] undoubtedly had no choice but to agree to the terms of the Indenture which provided for the appointment of a receiver upon the occurrence of any contractual default. The evidence also showed that bond proceeds of the Indenture, which were earmarked for specific capital improvements, were mostly used as operational funds. That is, very little of the bond money received in 2019 was actually used for the capital improvements designated in the Indenture. Accordingly, the Court finds that the Trustee was entitled to seek this remedy, and the Court further finds that irreparable harm will occur through the dissipation and wasting of [the Board's] assets if a receiver is not appointed by the Court."

The trial court further determined that there was no other adequate remedy at law for the injuries the trustee would suffer absent the appointment of a receiver. The Board appealed. See Rule 4(a)(1)(B), Ala. R. App. P. (permitting appeal of "interlocutory order appointing … a receiver").

## II.  Standard of Review

"Because the trial court heard 'live' testimony at the hearing it conducted in this case, we review its findings of fact under the ore tenus standard of review. '"Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence."' Ex parte Baron Servs., Inc., 874 So. 2d 545, 548 (Ala. 2003) (quoting Ex parte Cater, 772 So. 2d 1117, 1119 (Ala. 2000)). '[T]he ore tenus rule does not extend to cloak a trial judge's conclusions of law ... with a presumption of correctness.' Baron, 874 So. 2d at 549 (quoting Eubanks v. Hale, 752 So. 2d 1113, 1144-45

5

(Ala. 1999)). Therefore, we review all legal issues in this appeal de novo. Brown v. Board of Educ. of Montgomery County, 863 So. 2d 73, 75 (Ala. 2003)."

Eagerton v. Second Econ. Dev. Coop. Dist., 909 So. 2d 783, 788 (Ala. 2005).

The determination whether to appoint a receiver rests within the sound discretion of the trial court; this Court will not reverse the trial court's ruling unless the trial court has clearly exceeded its discretion. Wood v. Phillips, 823 So. 2d 648, 652 (Ala. 2001).

### III. Discussion

### A. Power to Appoint Receiver Under the Indenture and Pursuant to Alabama Law

The indenture is the operative document and controlling contract that outlines the rights and responsibilities, benefits and detriments, and continuing obligations relating to the issuance of the Series 2019 Bonds and the numerous parties involved in that transaction. Section 12.2(c) of the indenture provides, in relevant part, that, in the event of a default, the trustee shall be entitled "as a matter of strict right" to the appointment of a receiver to administer and operate the system. A court's power to appoint a receiver in a pending action is also statutorily

6

recognized. See Carter v. State ex rel. Bullock Cnty., 393 So. 2d 1368, 1371 (Ala. 1981) ("The power of a court to appoint a receiver in a pending action is statutorily recognized (§ 6-6-620, [Ala.] Code 1975); and, generally, the exercise of such power rests within the sound discretion of the trial judge."). The trustee initiated this action seeking the appointment of a receiver as one of its remedies under the indenture and pursuant to Alabama law. As indicated, the trial court determined that the trustee was entitled to the appointment of a receiver based solely on § 12.2(c) of the indenture. Nonetheless, the court also set forth the compelling circumstances that justified the appointment of a receiver. See Carter, 393 So. 2d at 1371 (noting that the appointment of a receiver is an extraordinary remedy and should not be granted "unless there is a clear legal right to be protected, no other adequate remedy, and a showing that the complainants will otherwise sustain irreparable damage"); see also Morgan v. McDonough, 540 F. 2d 527 535, (1st Cir. 1976) (noting that the appointment of a receiver to act in the place of "elected and appointed officials is an extraordinary step warranted only by the most compelling circumstances"). The trustee maintains that the trial court acted within its discretion to appoint the receiver solely

7

pursuant to the plain terms of § 12.2(c) of the indenture. This Court has not specifically addressed whether a party's advance consent to the appointment of a receiver in a contract is dispositive regarding the propriety of such an appointment or whether it is simply one factor among other equitable factors that a court must consider. However, because the appointment of a receiver is an extraordinary remedy, we conclude that the trial court properly considered not only the provision of the indenture allowing for the appointment of a receiver, but also the factors set forth in Carter.  See, e.g., LNV Corp. v. Harrison Fam. Bus., LLC, 132 F. Supp. 3d 683, 691 (D. Md. 2015) ("In [the court's] view, the parties cannot, through their contract, obligate the court to appoint a receiver. 'The receiver is considered to be an officer of the court,' … and thus creates obligations for the court. But, the parties' agreement is one factor, among many, in the court's consideration. Therefore, [the court] will consider the provisions in the loan documents … that call for a receiver, along with the equitable factors.").

### B.  Section 11-50-230 et seq., Ala. Code 1975

The Board does not dispute that events of default occurred under the indenture; nor does it dispute that both the indenture and § 6-6-620,

Ala. Code 1975, provide for the appointment of receiver. Rather, the Board argues that the trial court exceeded its discretion by appointing a receiver because, it says, the legislature has not authorized receivers to be appointed for waterworks and sewer boards organized under § 11-50-230 et seq. The Board argues that, in the absence of such statutory authorization, the judicial appointment of a receiver violated the separation-of-powers doctrine.[4] The Board is a public-utility corporation organized under the provisions of § 11-50-230 et seq. It is undisputed that the Board has control over the system. See § 11-50-235(a)(4), Ala. Code 1975 (noting that a public-utility corporation formed under § 11-50-230 et seq. has the power to "acquire, purchase, construct, operate, maintain, enlarge, extend, and improve any system ...."). It is also undisputed that the statutory framework grants the Board other powers, including the power to borrow money, to issue bonds, to pledge revenues

---

[4]The trial court rejected the Board's argument, noting that, if the argument was correct, then "a receiver could never be appointed to run a statutorily created public entity" like the Board. Notably, the legislature has endorsed the concept of appointing a receiver to administer and operate public-utility corporations. See Ala. Code 1975, § 11-81-180 (providing for the appointment of a receiver when a county defaults on bond obligations); § 11-50-529 (same for district electric corporations); and § 11-50A-14 (same for municipal electric cooperatives).

to secure payment of those bonds, and enter into contracts binding itself for money borrowed. See § 11-50-235(a)(5) (noting the power of a public-utility corporation formed under § 11-50-230 et seq. "[t]o borrow money and to issue … bonds payable solely from the revenues derived from the operation" of its system); § 11-50-235(a)(6) (noting the power of a public-utility corporation formed under § 11-50-230 et seq. "[t]o pledge for payment of its bonds any revenues from which such bonds are made payable and to mortgage, pledge, or otherwise convey the system or systems the revenues from which are so pledged"); and § 11-50-236, Ala. Code 1975 (providing that, "[t]o further secure the repayment of any money borrowed by it, [a public-utility] corporation [formed under § 11-50-230 et seq.] may enter into a contract or contracts binding itself for the proper application of the money borrowed ….").

Relevant here, § 11-50-235(b) provides:

> "Any mortgage, deed of trust, or <u>pledge agreement</u> made by [a public-utility] corporation [formed under § 11-50-230 et seq.] may contain such agreements as the board of directors <u>may deem advisable</u> respecting the operation and maintenance of the [system] and the use of the revenues subject to such mortgage, deed of trust, or pledge agreement and respecting the rights or duties of the parties to such instrument or the parties for the benefit of whom such instrument is made; <u>provided, that no such mortgage or deed of trust shall be subject to foreclosure</u>."

10

(Emphasis added.) Contrary to the Board's assertion, § 11-50-235(b) grants the Board broad power to enter into contracts containing terms that the Board "may deem advisable" with respect to the operation and maintenance of the system and the use of its revenues, and it does not contain any language expressly prohibiting the Board from contractually agreeing to the appointment of a receiver as a bargained-for remedy to protect bondholders in the event of a default. The only limitations on the Board's power under § 11-50-235(b) is that it may not contractually agree to the foreclosure of a mortgage or deed of trust encumbering the system. A waterworks and sewer board provides necessary public services to its citizens, so maintaining the operation of its system must continue for health and safety reasons; thus, foreclosure cannot be an option because the provision of water and sewer services cannot be terminated or abated. The legislature certainly could have included in § 11-50-235(b) that a public-utility corporation, such as the Board, be prohibited from contractually agreeing to a receivership over its system, but it did not. See Ex parte Jackson, 614 So. 2d 405, 407 (Ala. 1993) ("The judiciary will not add that which the Legislature chose to omit."). Accordingly, we find no merit in the Board's argument that it did not have the power to

contractually agree to the appointment of receiver under the indenture. See <u>McGlathery v. Alabama Agric. & Mech. Univ.</u>, 105 So. 3d 437, 444 (Ala. Civ. App. 2012) (noting that a statute that "did not contain any language prohibiting the board from delegating its power 'to remove any such instructors or other officers,' and the language granting the board the power 'to regulate, alter or modify the government of the university, as it may deem advisable[,] ... and to do whatever else it may deem best for promoting the interest of the university,' is broad enough to include the power to delegate its power 'to remove any such instructors or other officers' ").

### C.  Equitable Considerations

In addition to acknowledging the controlling and binding obligations of the indenture, the trial court also determined that, based on the compelling circumstances of the case, the trustee had a clear legal right to the appointment of a receiver under Alabama law. <u>Carter</u>, 393 So. 2d at 1371 (noting that the appointment of a receiver, being an extraordinary remedy, "should not be granted unless there is a clear legal right to be protected, no other adequate remedy, and a showing that the complainants will otherwise sustain irreparable damage").

The Board argues that the trial court was not justified in appointing a receiver because, it says, the issuance of a writ of mandamus compelling the performance of the Board's duties under the indenture -- e.g., the issuance of an order requiring the Board to make all payments required under the indenture, among other things -- was an adequate remedy. In fact, the Board suggests that the issuance of an order compelling performance of its duties and its noncompliance with such an order are conditions precedent to the appointment of a receiver. This argument has no merit. The Board concedes that the indenture governs the rights and remedies of the parties. The indenture sets forth three specific remedies available to the trustee in the event of a default by the Board. Section 12.2(a) of the indenture provides that the trustee may declare the bonds to be immediately due and payable; § 12.2(b) provides that the trustee may compel performance of the Board's duties by "by civil action, mandamus[,] or other proceedings"; and § 12.2(c) provides that the trustee "shall be entitled upon or at any time after the commencement of any proceedings … as a matter of strict right … to the appointment of a receiver to administer and operate the System." Section 12.7 of the indenture specifically states that "[n]o remedy … reserved to the Trustee

13

or to the Bondholders is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy …." In this case, the trustee, exercising its discretion under the indenture, elected to commence a civil action alleging breach of contract, and it sought the appointment of a receiver as a remedy for the alleged breaches. There is simply nothing under the indenture or Alabama law that required the trustee, under the circumstances of this case, to seek a writ of mandamus compelling performance of the Board's duties under the indenture before seeking another available remedy that it felt was justified. Notably, in its "Official Statement" to prospective bondholders, the Board disclosed in a section on "Bondholder Risks" that the remedies granted to the bondholders may not be available due to judicial discretion:

> "The Indenture does not grant a foreclosable mortgage on any properties of the Board, and no foreclosure or sale proceedings with respect to any property of the Board may occur. The remedies available to the registered holders of the [bonds] upon the occurrence of a default … are in many respects dependent upon judicial actions, which are often subject to discretion and delay. Under existing law, the remedies provided therein may not be readily available or may be limited, and no assurance can be given that mandamus or other legal action to enforce payment would be successful."

14

As the trustee points out, the Board did not disclose in the Official Statement that it may later challenge the appointment of a receiver as being a violation of the Alabama Constitution or as being impermissible under § 11-50-230 et seq. As the trustee further notes, the bondholders have no right of foreclosure, and the only security for the bonds held by the trustee are the net revenues generated by the operation of the system. Without a foreclosure right, the trustee must have assurance that the system's assets, which are in a disarray, can generate sufficient revenues to cover both operating expenses and debt service. Mac Underwood, the Board's operations manager since January 2023, testified that the Board did not have enough revenue to pay its operating expenses and that the Board was operating at a deficit, specifically losing $120,000 to $130,000 a month before taking into account the debt service under the indenture that it was not paying. Accordingly, the trial court's finding that no adequate remedy at law existed for the injuries the trustee would suffer absent the appointment of a receiver is well supported by the record.

The Board also contends that the evidence did not warrant a finding that the trustee would suffer either imminent or irreparable injury in the absence of the appointment of a receiver. As indicated, the trial court

15

found that the condition of the system had developed into a crisis because of years of "mismanagement and fiscal irresponsibility." The trial court noted that the system's infrastructure had "dissipated and fallen into ruin" and that 60% of the water purchased by the Board was "lost" through the Board's dilapidated system before it reached its consumers. The Board does not dispute that the system suffers from a crisis. Rather, the Board relies heavily on the fact that it has a "calculated and targeted" plan to decrease the water loss and that it was "attempting" to take steps in that direction through Underwood, its operations manager since January 2023. The Board posits that the receiver appointed by the trial court is faced with the same circumstances and is no better position than the Board and its new operations manager in curing defaults under the indenture and ensuring future bond payments. Although Underwood testified regarding the actions that had been implemented to correct the system's infrastructure and water loss, he also testified that Board was unable to pay its operating expenses, that the Board was operating at a deficit, that the Board was in default under the indenture, and that the defaults had not been cured. The trial court was in the best position to resolve all the issues regarding whether to appoint a receiver and, if so,

16

who to appoint. Notably, the Board appears to concede that it was necessary that someone other than the Board take to control of its operations because it not only hired Underwood to serve as its operations manager beginning in January 2023, but also requested that the trial court appoint him as the receiver to administer and operate the system. Moreover, in July 2023, the Board issued an invitation to bid for a concession agreement to operate and maintain the system. Despite the Board's recent efforts aimed at curing events of default under the indenture, the evidence supports the trial court's finding that irreparable harm would occur through the continued dissipation and wasting of the Board's assets if a receiver was not appointed.

### D.  Order Appointing Receiver

The Board argues, alternatively, that the order appointing the receiver should be modified to limit the receiver's powers to the enforcement of ministerial duties of the Board and to eliminate the trustee's control of the receiver's decisions. The indenture, which is valid and enforceable under Alabama law, provides that, upon the occurrence and continuation of any event of default, the trustee shall be entitled to the appointment of a receiver to administer and operate the system

17

"with power to fix and charge rates and collect revenues sufficient to provide for the payment of the Bonds and any other obligations outstanding against the System or the revenues thereof and for the payment of expenses of operating and maintaining the System and with power to apply the income and revenues of the System in conformity with the Indenture."

Additionally, the trial court vested the receiver with "all contractual, statutory, and common law powers, rights and privileges of a receiver, including but not limited to those set forth in Rule 66 of the Alabama Rules of Civil Procedure …." The trial court entered a detailed 27-page order describing the powers and duties of the receiver and instructing how it would interact with not only the trustee, but also the Board, the Prichard Citizens Advisory Council ("the advisory council"), and the trial court. The Board takes issue only with various parts of the order granting consent powers to the trustee. For example, the trial court indicated (1) that the receiver has the sole authority, after notice to the trustee and the Board, to enter into employment contracts necessary for the operation of the system, notwithstanding any "applicable rule or regulation that would otherwise be applicable to [the Board] in entering into such employment contract"; (2) that the receiver is instructed to develop a master plan and a revised plan, "acceptable in form and

18

substance" to the trustee, to address the stabilization of the system and to address the capital-improvement needs to ensure compliance with the "Rate Covenant" as defined in the indenture; (3) that the receiver is responsible for making expenditures in accordance with the budget and that it cannot amend the budget without the trustee's "prior written consent"; and (4) that the receiver has the right and authority upon consent of the trustee and the trial court to employ professionals. The Board claims that the trustee's consent powers destroy any notion that the receiver is an impartial officer of the trial court and that the trustee essentially "has been empowered to control the actions of the Receiver and thus the operations of the System." Board's brief at 66. We find this argument without merit. When considering the order in its entirety, it is clear that the trial court deemed it necessary to have a checks-and-balances system to confirm that the terms of the indenture are complied with and that the system will be administered and operated efficiently. The trustee has rights and duties under the indenture, and the trial court deemed it necessary for the trustee to have input. The trial court also deemed it necessary to involve the advisory council that it created:

> "The Receiver shall request feedback from the Advisory Council before assets are sold, rates are raised, or any

discontinuance of service to a group of five or more customers. The Advisory Council shall vote on the Receiver's major decisions (including but not exclusive of rate increases or asset sales). The results of such vote shall be provided to the Receiver, but the vote shall not be binding on the Receiver. Further, the Advisory Council should be apprised of, and feedback should be sought during, the financial audit that [the Alabama Department of Environmental Management] is financing once the Receiver has received this information. The Advisory Council shall cease to exist when the Court terminates the Receiver's position as Receiver and the Court ends its supervision of the System."

Finally, the trial court emphasized:

"[The Board] is not being dissolved, and its board members are not being impeached or otherwise removed. The Order herein provides that any rate changes sought by the receiver will be proposed to [the Board]. Any plan for refinancing the subject bonds will be proposed to [the Board and the trustee]. Likewise, any plan to sell, dispose, or transfer system assets (or privatize the system) will first be proposed to [the Board], the Trustee, the Advisory Council [created by court] …, the City of Prichard, and the Court."

Based on the foregoing, we conclude that the trial court properly exercised its discretion in fashioning an order that was best for all concerned. The trial court balanced the competing interests of the parties by considering their respective equities and obligations, all for the benefit of creating a viable system to provide water and sewer services that would enable the bondholders to not lose their investments. See Corner Stone Funeral Chapel, Inc. v. MVMG, LLC, 170 So. 3d 626, 630 (Ala.

20

2014) ("Generally, '[t]he court has the discretion in receivership proceedings to do what is best for all concerned.' 65 Am. Jur. 2d <u>Receivers</u> § 135 (2011).").

IV.  Conclusion

We affirm the order of the trial court appointing the receiver and vesting the receiver with all powers necessary to administer and operate the system.

AFFIRMED.

Parker, C.J., and Wise, Stewart, and Cook, JJ., concur.